## Edwin S. Hartwell Lumber Company v. John Bork, Jr.

### Gen. No. 13,605.

EVIDENCE—*competency of offers of compromise.* It is error to permit evidence which tends to show that one of the parties to the cause sought or may have sought to settle the litigation in question, and error in this respect is aggravated by the fact that argument is made to the jury predicated upon such supposed efforts at compromise.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. ROBERT W. WRIGHT, Judge, presiding. Heard in this court at the March term, 1907. Reversed and remanded. Opinion filed January 27, 1908.

LACKNER, BUTZ & MILLER and W. G. SHOCKEY, for appellant.

BRANDT & HOFFMANN, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

It is with reluctance that we disturb the judgment in this cause, based as it is on the verdict of a jury on conflicting testimony. After a careful consideration and analysis of that testimony we are of the opinion that the jury were the proper judges of the questions involved in it, and that we are not called on to set aside the verdict that was rendered on the ground urged by the appellant's counsel, that it was clearly and manifestly against the weight of the evidence.

Consideration of the three offered instructions, the refusal of which is complained of in the argument, has convinced us that the first two (numbered sixth and seventh) were objectionable, and the third (numbered tenth), if not objectionable was fully covered by at least one other instruction, which was given.

It is an error of the trial judge in his rulings on the admission of evidence, connected with the argument and comments of counsel to the jury thereafter on the testimony admitted under that ruling, that places on us the obligation, as we think, to send back this close case, already twice tried, for another examination, from which this improper and, as we deem it, dangerous factor shall be eliminated. Other alleged errors in rulings on evidence are complained of by appellant, but we find nothing reversible or indeed objectionable in any rulings except in that to be hereinafter stated. Nor should we perhaps regard even that error (although we hold it to be apparent) sufficient by itself to reverse the judgment, were it not that it was accentuated and emphasized and its danger and possible effect in warping the judgment of the jury increased, by the argument founded on it which

counsel in his zeal permitted himself improperly, as we think, to urge upon them.

The nature of these coupled errors in the conduct of the trial is such that it is not necessary for us, in this opinion, to state even the pleadings and the facts involved in the litigation. It is, moreover, our policy when sending back a cause like this for a new trial, to treat of the facts as lightly as possible.

It is sufficient to say that the cause was a suit for a personal injury suffered by the appellee, the plaintiff below, while he was in the employ of the appellant, the defendant below. A sharply and closely contested question, which was relevant and material in the controversy, was whether a certain order was given to the plaintiff by another employe of the defendant, who was foreman over the plaintiff. This foreman's name was Nemode. He denied giving the order in question. The plaintiff asserted that he did give it. There was conflicting and contradictory testimony from others about it. The case was twice tried, as we have said. At the second trial, on cross-examination of Nemode, he was asked this question by plaintiff's counsel:

"Q. Did you while the trial" (referring to the first trial of the cause two years or more before) "was in progress, call on Mr. Bork, this plaintiff here, at his house Saturday morning pending that trial, and try to talk the case over with him and try and get him to settle the case with the company?"

An objection was interposed by the counsel for defendant, but overruled by the court.

The answer was, "Yes, sir, I did."

The examination then proceeded thus:

"Q. Who sent you there?
Defendant's Counsel: Same objection.
    Objection overruled and exception.
A. No one sent me there.
Q. What did you go there for?
A. I went there out of sympathy for the boy.

Q. Out of sympathy for the boy? A. Yes sir, I did.

Q. You sympathized with him so much that you went there and tried to get him to settle the case for a small sum with the Hartwell Company, did you?

> Objection by defendant's counsel; objection sustained.

Q. Weren't you sent there by the Hartwell Lumber Company?

> Objection by defendant's counsel.

The Court: Objection sustained. He said he wasn't sent there at all.

Plaintiff's Counsel: Q. Did any one ask you to go there? A. No, sir.

Defendant's Counsel: I object to that.

The Court: Objection sustained. He says he wasn't sent there.

The Witness: I said, no sir.

*     *     *     *     *     *     *     *

Q. Now, Mr. Nemode you have taken a great interest in this case, haven't you, from the beginning?

A. Why—

Q. Answer yes or no. A. Yes."

Counsel for plaintiff say in their argument in this court, as to this testimony: "Any interest which a witness may have taken in a case such as hunting up witnesses for a party or in any way interesting himself on behalf of a party, is competent to be shown as bearing on his bias and feeling in the case. It is very important testimony bearing on the credibility of the witness. It is perfectly elementary that it was competent to ask Nemode the question complained of, or any other question showing that he had interested himself in the case. No sum was suggested as having been offered or mentioned by Nemode. It was confined to the fact that he had interested himself in that way in the case, and the evidence was on elementary principles clearly competent."

It is quite obvious that this is not a complete statement of the purport or effect of the testimony admitted over objection.

It was not "hunting up witnesses" by Nemode which counsel thus got before the jury. It was a proposition of settlement made or suggested by a person who was accused of being, by his original interference, responsible for the defendant's alleged liability. It was a proposition or suggestion not accepted but made by an employe of the defendant. It was implied in the subsequent questions that were ruled out, that the plaintiff's counsel imputed the suggestion to the defendant itself. So viewed, it would serve in argument as an admission of liability on the part of the defendant and of a consciousness of responsibility for that liability on the part of the witness.

But for neither of these purposes should a suggestion of settlement not accepted, made by either witness or defendant, have been used.

Public policy is against allowing proofs of attempts to settle law suits out of court, because it discourages such attempts by raising the danger of their being used as admissions of liability.

Lord Mansfield is quoted in Rice on Evidence, sec. 243, as saying: "It must be permitted to all men to buy their peace without prejudice to them should the offer not succeed, such offers being made to stop litigation without regard to whether anything is due or not. That no advantage shall be taken of offers made by way of compromise, and that a party may with impunity attempt to buy his peace, are well established rules of law." The quotation is not identified by citation. It, however, undoubtedly expresses the law, and Mr. Justice Dibell of the Appellate Court of the Second District, in Gehm v. The People, 87 Ill. App. 158, quotes it with this judicious remark: "A mere unaccepted offer to pay a sum in compromise of a suit or claim is not admissible in evidence against a party on grounds of public policy. An innocent person has a right to buy his peace and thus avoid suit. If such offer could afterwards be given in evidence against the party making it and used as a tacit admission of

liability, no attempt to compromise a suit would ever be made.''

Judge Pleasants said in Rollins v. Duffy, 18 Ill. App. 398, of testimony of an offered settlement, which in that case, however, was introduced by the person making it. ''The door ought always to be closed so far as possible against such evidence.''

For all this, inasmuch as the witness in this case disclaimed having made overtures of settlement except on his own initiative, and, as counsel suggest, did not mention any sum as considered or spoken of, we might, as we have before indicated, have been able to overlook the error of admitting this evidence had the counsel for the plaintiff been content with it as given, and not insisted upon it or tried to use it otherwise than as showing that the witness felt an interest in the law suit.

But any possible doubt as to the intent with which the questions were asked, and the effect desired by the answers, was removed by the argument addressed by counsel to the jury founded on them.

Counsel for plaintiff said to the jury: ''We have Nemode sneaking over to Bork's house while the other trial was in progress, trying to get him to settle that case without the intervention of his lawyers, and he says nobody sent him. He went of his own accord. Do you believe it? Who sent him? Of course, somebody sent him. Who sent him?

Counsel for Defendant: I object to that last statement.

Counsel for Plaintiff: I say that it is a perfectly fair statement. Mr. Nemode having no interest in this case, couldn't go there unless somebody sent him.

Counsel for Defendant: The testimony is that he wasn't sent there.

Counsel for Plaintiff: He said so. He lied when he said it.

Counsel for Defendant: I object to that remark.

The Court: The objection is sustained to that re-
mark.

Counsel for Plaintiff: I think Mr. Nemode never
went there of his own accord.

Counsel for Defendant: I object to that as abso-
lutely opposed to all the evidence.

The Court: He has a right to argue any reasonable
inference to be drawn from the evidence. Whether
that is reasonable or not is for the jury.''

To this ruling of the court counsel for defendant ex-
cepted.

In our opinion the inference suggested was *not* for
the jury. The inference sought to be drawn was that
defendant had sent the witness to suggest settlement.
The only possible relevancy of this inference would be
that it might lead to the farther one that the defendant
admitted his liability. But this is precisely what such
overtures for settlement are held not to do. They are
excluded from proof because they would have a ten-
dency in fact to lead the jury to believe them to indi-
cate what in law they are not held to be evidence of.

Counsel for plaintiff then went on: ''I have the
right to say to you that a man who had no interest
in this case never went up there to Bork's place with-
out somebody sending him and egging him into it.''
And again—''This boy has been persecuted by this
concern straight down from the time of the last trial,
and you see the evidence of it.''

Counsel for defendant objected to this statement,
and on the objection being overruled, excepted.

Again counsel for plaintiff said: ''Then when the
trial was on, in here comes this Nemode, working for
the defendant in their employ as he testified, and he
takes a whack at him. They did not succeed.''

We cannot tell what effect this testimony and this
line of argument on that testimony, had upon the minds
of the jury when they came to consider in this close
case the sharply conflicting evidence which bore on
the alleged liability of the defendant and the alleged
responsibility of the plaintiff therefor.

For the errors indicated therefore, in admitting this testimony and in allowing the comments that were made thereon, we reverse the judgment and remand the cause for another trial.

*Reversed and remanded.*