## Charles B. Graff, Appellee, v. Earl E. Fox et al. Dan Gorman, Appellant.

1. CHATTEL MORTGAGES, § 216*—what are rights of indorsee of note secured by chattel mortgage. Under the statute (J. & A. ¶ 7602), the indorsee of a note before maturity which states on its face that it is secured by a chattel mortgage takes it subject to all defenses existing between the payee and the payor.

2. PRINCIPAL AND SURETY, § 56*—what is effect of judgment against principal and surety. The fact that a judgment is rendered against two makers of a note, one of whom was a surety only for the other, does not change the relationship of the parties to each other.

3. BILLS AND NOTES, § 177*—what are rights of surety against indorsee. A party signing a note as surety for his comaker is entitled to all the rights of a surety against an indorsee having knowledge of such suretyship.

4. BILLS AND NOTES, § 431*—when evidence inadmissible to vary terms of note. Evidence tending to show that at the time a certain note sued on was made there was an agreement between the parties that one maker signing as surety for the other should be released from liability when a certain mortgage should subsequently be made by the principal maker of the note, held inadmissible, as such agreement would be inconsistent with the terms of the note and such evidence is an attempt to vary such terms by a previous or contemporaneous verbal agreement.

5. EVIDENCE, § 160*—when evidence of compromise should be excluded. Admissions of a party are never conclusive against him, and when made for the purpose of effecting a compromise of the matter in dispute should be excluded as evidence on the ground of public policy.

6. PAYMENT, § 14*—what are rights of creditor and debtor as to application of. A debtor may control the application of voluntary payments made by him, and if he does not direct their application the creditor may.

7. PRINCIPAL AND SURETY, § 60*—when surety may not direct application of payments by principal. A surety has no right to direct the application of voluntary payments made by his principal to the debt for which such surety is liable.

8. CHATTEL MORTGAGES, § 269*—when creditor may apply proceeds of sale to most precarious debt. Where a chattel mortgage does not provide how the proceeds on a sale of the mortgaged

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

property shall be applied, the creditor may apply same to the most precarious debt.

9. CHATTEL MORTGAGES, § 269*—*application of proceeds of sale.* Proceeds of the sale of mortgaged chattels should be applied to the mortgage debt unless a sufficient legal excuse is shown for their application otherwise.

Appeal from the Circuit Court of Morgan county; the Hon. FRANK W. BURTON, Judge, presiding. Heard in this court at the October term, 1916. Reversed and remanded. Opinion filed April 16, 1917.

W. T. WILSON and JOHN M. BUTLER, for appellant.

WORTHINGTON, REEVE & GREEN, for appellee.

MR. PRESIDING JUSTICE THOMPSON delivered the opinion of the court.

Charles B. Graff brought this suit in assumpsit against Earl E. Fox, Edith M. Fox and Dan Gorman. The declaration consists of one count on a promissory note executed by the defendants for $1,500, dated at Jacksonville, Illinois, February 10, 1915, payable to the order of H. J. Rodgers one year after date with interest from date at seven per cent. per annum. The note recites that it is secured by a chattel mortgage and was indorsed by the payee to the plaintiff on February 8, 1916. Defendant Gorman filed the general issue and special pleas averring (1) that he was a surety on the note, which was known to the payee when the note was executed, and that when the note was delivered it was agreed that if he would sign the note as surety the payee would take a chattel mortgage on a crop of corn to be planted by the principal debtor and the surety should thereupon be released from all liability and that said mortgage was taken by the payee; (2) that he as surety was discharged by the failure of the mortgagee to apply the proceeds of the mortgaged property to the payment of the mortgage indebtedness; (3) that he was an accommodation maker and it

was agreed that he should be released when a mortgage was taken on the principal maker's corn crop; and (4) a plea of payment. Issues were joined on the pleas. The case was tried before the court without a jury. Judgment was rendered against all the defendants for $1,653.42. The defendant Gorman prosecutes this appeal.

There is no dispute concerning the following facts: On February 6, 1915, the First National Bank of Waverly, Illinois, held a judgment note for $3,000 against E. E. Fox and his wife, Edith M. Fox, and another for $1,500 against the Foxes and Gorman, on which judgments were entered on that day against the makers. Fox is a tenant farmer, who raised grain on shares, his landlord receiving one-half of the grain at the market. Gorman is also a farmer. They both reside between Franklin and Waverly. H. J. Rodgers is vice president of the Ayres National Bank of Waverly. Fox, after the entering of the judgments, went to Rodgers and asked for a loan of $5,500 to pay off the judgments, and offered to give a chattel mortgage on all his personal property. Rodgers declined to loan the money on the security offered, without additional security, and asked Fox if he could not get Gorman to sign a note with him. Fox got in communication over the telephone with Gorman, who lived nineteen miles from Jacksonville, and had him come to Jacksonville. Gorman refused to sign a note with Fox. Rodgers told Gorman that if he signed a note he would not be in any worse position than he was in already. The result was that Rodgers made the loan on a note of $4,000 executed by Fox and his wife, and the note sued on in this case executed by Fox, his wife and Gorman. The notes bear the same date and became due one year after date. Fox and his wife at that time also executed to Rodgers a chattel mortgage, securing the two notes, on a field of winter wheat and all his personal

property except his household goods. It was also agreed at that time that Fox should further secure the notes by a chattel mortgage on the corn he should plant the next season. Rodgers, out of this loan, paid the sheriff $5,029.77 in satisfaction of the judgments, gave Fox a check for $413.13 and the remaining $57 was applied in payment of a small note that Rodgers held against Fox.

On June 2, 1915, Fox executed and delivered to Rodgers another chattel mortgage on 307 acres of corn growing on a farm rented by him described as the Moxon farm, securing the said two notes, and also a note for $1,000 made that day by Fox to Rodgers, due at the same time as the other notes. The $1,000 note was given for $300 advanced to Fox by Rodgers May 1, 1915, and $700 the day the last note and mortgage were executed. Rodgers made further advances to Fox of $150 on September 21st; $100 on October 23rd; $100 on November 14th; $100 on December 13th, for which notes were taken and on January 29, 1916, he paid a life insurance premium for Fox of $82.20. Rodgers also was running a blacksmith shop in which work amounting to $105.43 was done for Fox. It thus appears that Rodgers advanced to Fox, in cash and blacksmithing, $635.85 in addition to the $1,000 for which the note of June 2nd was given and which was secured by the chattel mortgage on the corn.

The half of the winter wheat that belonged to Fox, that was covered by the mortgage dated February 10th, was sold for $949.88, Rodgers received $500 of the proceeds of the wheat and permitted $449.88 to be paid to Fox. The grain merchant, who bought the corn covered by the chattel mortgage of June 2nd, testified that he paid $2,058.99 of the proceeds of the corn to Rodgers and $949.88 to Fox, and that Rodgers authorized him to make certain payments from the proceeds of the corn to Fox. The merchant states that

he overpaid Fox but the sums paid to Rodgers and Fox are less by a small sum than the amount paid to the landlord. There is also evidence tending to show that Fox received $1,000 from the proceeds of the corn. The grain merchant may have quoted erroneous figures, when he stated the amount Fox received from the corn was identical with the total proceeds of the wheat. Rodgers also received from the foreclosure of the first chattel mortgage, not including the proceeds of the winter wheat, net $2,566.87.

. Rodgers applied the proceeds from the mortgaged corn received by him, first to the payment of the notes taken by him for advances to Fox and interest thereon, the blacksmith bill, the insurance premium and the $1,000 note, and the balance $374.17 was credited on the $4,000 note. The moneys received by Rodgers from the sale of the wheat and the foreclosure of the first mortgage were also credited on the $4,000 note, leaving a balance of over $800 on that note and the entire $1,500 note and interest thereon, the note sued on, unpaid. .

The note on its face stated that it was secured by a chattel mortgage, and under the statute appellee, as indorsee of the note, took it subject to all defenses existing between the payee and the payor. Jones & Addington Stat. ¶ 7602.

It is contended on behalf of appellee that Gorman was not a surety on the note as between Fox and appellee. The fact that a judgment had been rendered on the note held by the First National Bank of Waverly did not change the relationship between Fox and Gorman. It was said in *Trotter v. Strong,* 63 Ill. 272, which was a suit at law, that the judgment merely changed the form of the obligation. The statements made by Rodgers to Gorman, when he said he would be in no worse position if he signed the note than he was already in, and to Fox, ''Would Dan secure your

note again?" show that Rodgers knew that appellant was a surety, and, in addition thereto, Fox was the party who applied for the loan and Rodgers gave him a check for $412.13 of the proceeds, and also applied $57 in the payment of a note held by him against Fox. We have no doubt from the evidence that appellant was only a surety for Fox and that Rodgers knew that fact. Appellant is therefore entitled to all the rights of a surety as against Rodgers.

The appellant introduced evidence that tended to prove the pleas, that at the time the note was made there was an agreement that the appellant should be released from liability, when a mortgage should be made by Fox to Rodgers on the corn to be planted by him. This evidence tended to show a verbal agreement only, and it was admitted over the objection of appellee. The verbal agreement attempted to be proved was inconsistent with the terms of the note and was improperly admitted for the reason that it was seeking to vary the terms of the note by a previous or contemporaneous verbal agreement. *Mager v. Hutchinson*, 7 Ill. 266; *Harlow v. Boswell*, 15 Ill. 56; *Murchie v. Peck Bros. & Co.*, 160 Ill. 175; *Schultz v. Meyer*, 181 Ill. App. 335. The admission of the erroneous evidence introduced by appellant was harmless error, since the trial court found against him.

Rodgers was also permitted to testify to a conversation that was held early in February, 1916, between himself, Gorman and Moxon, in reference to an adjustment and extension of time of payment of the note in suit. The evidence was admitted on the theory that it was an admission of liability on the part of appellant and a contradiction of his claim that he had been released. The conversation was an attempt to settle the controversy between the parties. Admissions of a party are never conclusive against him, and, when made for the purpose of effecting a compromise of the

matter in dispute, should be excluded as evidence on the ground of public policy. *Rockafellow v. Newcomb,* 57 Ill. 186.

It is also contended by appellant that the entire proceeds of the mortgaged property should be credited ratably on the $4,000 note and the $1,500 note. In case of voluntary payments by a debtor, he may, if he chooses, control the application of the payment, and if he does not direct the application the creditor may exercise that right. "Where a surety is liable for a part only of the entire indebtedness of the principal to the creditor, and the principal makes a payment on account of his indebtedness, he is entitled to designate to which particular part of the indebtedness it shall be applied, regardless of the wishes of the creditor, or of the surety; and, after application has been made to a debt for which the surety was liable, it cannot be changed," and if the debtor omits to designate how he wishes the money applied the creditor may apply it to any part of the indebtedness. The surety has no right to insist upon its application to the debt for which he is liable. 32 Cyc. 170. "A creditor holding collateral securities from the principal to secure several notes is entitled, in the absence of any stipulation or agreement, to apply them or their proceeds, in the event that sufficient is not realized to discharge the whole amount of the indebtedness to such of the notes as he may select. Nor is it material that some of the notes so secured bear the names of sureties while others do not. The creditor has the election, subject to agreement, to apply such securities or the proceeds thereof to the payment primarily of such of the notes as do not bear the name of sureties." Colebrooke on Collateral Securities, sec. 219; Brandt on Suretyship, sec. 442; *National Bank v. Bigler,* 83 N. Y. 51; *Field v. Holland,* 6 Cranch (U. S.) 8; *Wilcox v. Fairhaven Bank,* 7 Allen (Mass.) 270. The payments were not

voluntary, they were made from the sale of mortgaged property. The law required that the proceeds be applied to the debt secured thereby. The debtor not having designated in the mortgage how the proceeds of the mortgaged property should be applied, it was the right of the creditor to apply the payment to the most precarious debt. *Hansen v. Rounsavell,* 74 Ill. 238; *Monson v. Meyer,* 190 Ill. 105; *Monson v. Meyer,* 195 Ill. 143; *Plain v. Roth,* 107 Ill. 588. This contention of appellant cannot be sustained.

It is further contended that the court erred in not crediting on the notes dated February 10, 1915, the sum of $1,635.85, part of the proceeds of the mortgaged corn that was applied by Rodgers to the payment of items claimed to have been advanced by him to Fox to aid in running the farm, and the sum of $449.88 received by Fox from the sale of the wheat and $949.88 received by him from the proceeds of the corn. Of the sum of $1,635.85, $1,000 was advanced and secured by the mortgage on the corn. No reason is shown why Rodgers is not entitled to the payment of that note and interest thereon, from the proceeds of the corn, since it was secured by the mortgage. The money paid as premium on a policy of life insurance for Fox, the blacksmith bill and the other advances were not secured by either mortgage. The chattel mortgage executed at the time the note executed by appellant was made covered the winter wheat. It was the duty of Rodgers to see that all the mortgaged property was applied on the notes secured thereby. Appellant is entitled to have the $449.88 received by Fox from his share of the winter wheat applied on the mortgage debt. The remainder of the $1,635.85, with any interest collected thereon, together with the part of the proceeds of Fox's share of the corn that was paid to Fox by the grain merchant with the consent of Rodgers, should be credited on the mortgage debt, un-

less a sufficient legal excuse is shown for the application of such proceeds of the corn as they were used. The testimony of Rodgers that he advanced such moneys for expenses is the statement of a conclusion. There is neither any competent evidence in the record tending to show for what the said sums were used nor any evidence tending to show any agreement by Gorman that such advances should be made and paid out of the mortgaged property.

It is also argued that the court erred in its rulings on propositions of law presented by the parties. The questions presented have already been reviewed. For the errors pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*