The Aetna Acc. & Lia. Co. v. Alexander Lumber Co., 215 Ill. App. 555.

structions, but such objections are hypercritical and without force.

Finding no reversible error in the record the judgment is affirmed.

*Judgment affirmed.*

## The Aetna Accident & Liability Company, Appellant, v. Alexander Lumber Company et al., Appellees.

1. BUILDING AND CONSTRUCTION CONTRACTS, § 77*—*when evidence does not sustain claim as to statement to surety on bond as to contractor's indebtedness.* Evidence *held* not to sustain the claim of the surety on a building contractor's bond that the district manager of a lumber company made a positive statement, prior to the surety's execution of the bond, that the contractor's indebtedness to the lumber company did not exceed a certain sum, and therefore that the surety was induced to execute the bond as a result of a misrepresentation of a material fact, but to conclusively show that such manager stated that he could only approximate such indebtedness.

2. BUILDING AND CONSTRUCTION CONTRACTS, § 77*—*when evidence shows question of contractor's indebtedness did not influence execution of bond by surety.* Evidence *held* to show that the question of the indebtedness of a building contractor to a lumber company could have had little, if any, influence with a surety company in inducing it to execute the contractor's bond.

3. PRINCIPAL AND SURETY, § 32*—*right of principal to designate how payment made by him shall be applied.* When a surety is liable for a part only of the entire indebtedness of the principal to the creditor, and the principal makes a payment on account of his indebtedness, he is entitled to designate to which particular part of the indebtedness it shall be applied, without regard to the wishes of the creditor or surety.

4. PRINCIPAL AND SURETY, § 32*—*how creditor may apply payment made by principal.* If the principal in a bond, when making a payment to the creditor, fails to designate how he wishes the money

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

applied, the creditor may apply it to any part of the principal's indebtedness, the surety having no right to insist upon the application of the payment to the debt for which he is liable, nor does it make any difference that the surety was not aware of the existence of any other indebtedness of the principal than that for which the surety became liable.

5. PRINCIPAL AND SURETY, § 32*—*how court will apply payment made by principal.* When neither the obligee nor the principal in a bond makes any application of a payment by the latter, and their transactions afterwards became a matter of judicial adjustment, the court will apply the payment as equity seems to require, usually to the oldest item, unless the parties' conduct indicates that the payments were to be credited to later items.

6. APPEAL AND ERROR, § 384*—*when question cannot be raised in Appellate Court.* A surety on a contractor's bond cannot claim in the Appellate Court that it was discharged from its obligation by the varying of the terms thereof by an agreement between the contractor and a lumber company when no such claim was pleaded by it in the court below.

7. EQUITY, § 132*—*what bill must allege.* It is elementary that a bill must allege all facts necessary to entitle the complainant to relief.

8. EQUITY, § 247*—*when surety on contractor's bond should amend bill.* Where knowledge of a transaction which the surety on a contractor's bond claims discharged it from its obligation came to it only after the transaction had been developed by the evidence in its suit in equity, it should have amended its bill and alleged the facts if it desired to take advantage of the transaction, or seek any relief by reason thereof.

9. APPEAL AND ERROR, § 1207*—*when appellant cannot urge lack of proper pleading and proof.* Since an appellant cannot complain of the insufficiency of the allegations of its own bill, an appellant, which was the surety on a contractor's bond, cannot urge that the decree against it cannot be sustained in the absence of allegation, proof and determination of the rights of others than the appellee lumber company when, if there was error in this regard, it was the fault of appellant which filed the original bill.

Appeal from the Circuit Court of Champaign county; the Hon. FRANKLIN H. BOGGS, Judge, presiding. Heard in this court at the April term, 1919. Affirmed. Opinion filed October 21, 1919.

GREEN & PALMER and L. L. DENT, for appellant; L.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

L. DENT, HENRY I. GREEN and ORIS BARTH, of counsel.

DOBBINS & DOBBINS, for appellee Alexander Lumber Company.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

The Aetna Accident & Liability Company, appellant, appeals from a decree of the Circuit Court of Champaign county dismissing its amended bill for want of equity and granting a money judgment for the sum of $17,560.35 against it and against Mark S. Freeman and Ellis Brooks, copartners as Freeman & Brooks, on a cross-bill filed by the Alexander Lumber Company.

It is alleged in the bill as amended in substance that appellant on the 15th day of August, 1914, entered into, as surety for Freeman & Brooks, as principals, a certain bond to the Board of Trustees of the University of Illinois, as obligee, in the penal sum of $188,769; that the conditions of the bond were as follows:

"THE CONDITION OF THE ABOVE OBLIGATION is such That WHEREAS, the said Freeman and Brooks did on the 14th day of Aug. A. D. 1914, enter into a contract with the said Board of Trustees of the University of Illinois, for the erection of a structure known as the CHEMISTRY BUILDING, in accordance with said contract, and in accordance with the plans, specifications and profiles in connection therewith; and,

"WHEREAS, it is provided among other things in said specifications that said Contractor shall give, within five (5) days after execution of said contract, a Surety Bond in the full amount of said contract, guaranteeing the faithful performance of the contract in accordance with the terms thereof, and including a provision providing for the protection of sub-contractors, material men, mechanics, workmen, or other person furnishing material or labor, to the same ex-

tent as though they were parties to the bond and agreement.

"Now THEREFORE, if the above bounden Freeman Brooks shall well and truly perform and fulfill all the covenants and agreements by them in and by said written contract covenanted and agreed to be performed and fulfilled as therein set forth, and to the satisfaction of the said Board of Trustees of the University of Illinois and evidence by their written approval, and shall save and keep harmless the said Board of Trustees of the University of Illinois from all and every claim for liens, for material or labor or otherwise incurred by reason of the erection or completion of the said building, and shall save, indemnify and keep harmless the said Board of Trustees of the University of Illinois from all and every claim, expenses, loss or damage for, on account of, or by reason of any claims which may be set up or made by any other person holding a patent right, or in any manner entitled to protection, in the matter of any article or any portion of any article any method of construction or operation, used by the above bounden Freeman and Brooks in the performance of said written contract, and shall turn over the said building and the said premises free and clear from any and all claim or claims for infringement of patent or other right to protection and shall, irrespective of the right of any sub-contractor, material man, mechanic, workman, laborer, or other person furnishing material or labor in or about the erection and completion of said building, and irrespective of any other security which may exist against the said principals, at or before the turning over of the said building to the said Board of Trustees of the University of Illinois pay in full all indebtedness which it, he or they may owe to any such sub-contractor, material man, mechanic, workman, laborer, or other person so furnishing material or labor, it being hereby understood and agreed by the parties hereto that this bond and agreement is entered into, not only for the protection of the said Board of Trustees, of the University of Illinois, but also for the protection of the said sub-con-

tractor, material man, mechanic, workman, laborer, or other person so furnishing material or labor, who shall have the right to enforce the obligation of this agreement and bond against the said principals and surety in the same manner and to as full an extent as though they were parties to this bond and agreement, it being understood and agreed, however, that this protection shall not extend to any party or parties to whom the said principal is not directly indebted by reason of the furnishing of labor or material in or about the erection or construction of the said building, then this obligation to be void, otherwise to remain in full force and effect.''

It is further alleged that appellant was induced to execute said bond on the misrepresentation to it of a material fact by the Alexander Lumber Company, the use plaintiff in a suit at law on said bond, which was that said Freeman & Brooks were not, at the time of the execution of said bond, indebted to said Alexander Lumber Company in excess of the sum of $10,000, which statement was untrue and known to be untrue by the Alexander Lumber Company at the time it was made to appellant, inasmuch as at that time said indebtedness exceeded $20,000; that said false statement was made for the purpose of inducing appellant to execute said bond, well knowing that it would rely thereon and, in so relying, execute said bond and suffer loss and damage; that the Alexander Lumber Company brought a suit at law against appellant to recover $20,000 as the value of certain material alleged to have been furnished to said Freeman & Brooks in the construction of said Chemistry Building; that the contract price on the Chemistry Building and the Administration Building was $294,653; that said Freeman & Brooks began the construction work on the Chemistry Building in August, 1914, and completed the same in September, 1916; that for a long time prior to August, 1914, and during said period of time to September, 1916, Freeman & Brooks were indebted to the Alexander Lumber

Company for material furnished by the latter to the former on a number of contracts other than said Chemistry Building, to wit, the buildings known as the Park Theater, Universalist Church, The Mueller, The Stipes & Hecker, The Phi Sigma Kappa, the Illinois Building, the Lewis, the Armstrong School, the I. O. O. F. Building and others; that during said period of time, Freeman & Brooks paid to the Alexander Lumber Company moneys derived exclusively from the Chemistry Building contract, as the Alexander Lumber Company well knew in excess of the sum of $26,000; that all of said moneys were applied by the Alexander Lumber Company in payment of indebtedness of Freeman & Brooks for material furnished on buildings other than said Chemistry Building; that said sum was more than the amount of the Alexander Lumber Company's claim for material furnished by it to Freeman & Brooks on the Chemistry Building and that none of said moneys were applied by the Alexander Lumber Company on its Chemistry Building account with Freeman & Brooks. That said bond expressly provides: "This protection shall not extend to any party or parties to whom the said principal is not directly indebted by reason of the furnishing of labor or material in or about the erection or construction of the said building," by reason whereof it was the duty of the Alexander Lumber Company to apply all of said moneys derived from said Chemistry Building contract in payment of material furnished by it to Freeman & Brooks in the construction of said Chemistry Building; that appellant has the right to have the payments made by Freeman & Brooks to the Alexander Lumber Company applied in payment of material furnished under the Chemistry Building contract and that appellant is not bound by an application of such payments to pre-existing or concurrent indebtedness, and that such right of exoneration existing in favor of the surety, there being a special equity in favor of the surety to

have the contract price of the Chemistry Building contract applied in payment of liabilities incurred by the contractor for 'material necessary for the construction of said Chemistry Building; that the Alexander Lumber Company claims that Freeman & Brooks did not give to it any direction as to the application of said moneys and that thereby under the special right and equity of appellant it became and was the duty of the Alexander Lumber Company to apply them on the Chemistry Building material account and not otherwise.

The bill further alleges that, at the time of the execution of said bond, Freeman & Brooks, in order to indemnify appellant against loss or liability which it might sustain by reason of the execution of said bond, executed an indemnity agreement, a copy of which is attached to the bill, whereby Freeman & Brooks assigned to appellant their construction plant, tools, appliances and equipment used by them in the construction of said Chemistry Building, of which said assignment the Alexander Lumber Company then and there had notice; that Freeman & Brooks, subsequent to the execution of said indemnity agreement, executed to the Alexander Lumber Company diverse bills of sale, chattel mortgages and assignments of said construction plant, tools, appliances, etc., in violation of the interests of appellant therein.

The bill further alleges that the equitable matters mentioned are not receivable as defenses in actions at law and that unless the Alexander Lumber Company is restrained from prosecuting said suit at law, appellant will suffer irreparable injury.

The bill as amended makes the Alexander Lumber Company, Freeman & Brooks and the Board of Trustees of the University of Illinois parties defendant and prays for a discovery of all the accounts between the Alexander Lumber Company and Freeman &

Brooks; that the bills of sale, chattel mortgages, etc., executed by Freeman & Brooks to the Alexander Lumber Company be set aside and "in the event it may be determined that this complainant is in any manner liable upon said writing obligatory to the defendant, the Alexander Lumber Company, the complainant, prays that an accounting be had, and that the entire subject-matter of said action at law be heard and considered in this cause, in so far as the issues therein are cognizable in a suit of equity."

The Alexander Lumber Company in its answer, denies that it fraudulently made the misrepresentation alleged; that it had knowledge of the source of the particular moneys paid to it by Freeman & Brooks; that it had any knowledge of any assignment to appellant by Freeman & Brooks of the equipment, tools, etc., of the latter; and that appellant has any equitable right to have the moneys paid to it by Freeman & Brooks during said period of time applied upon the indebtedness of Freeman & Brooks to it in the manner claimed in the bill.

By its cross-bill the Alexander Lumber Company asks for an accounting and that a money judgment be rendered in its favor for the amount found due for materials furnished to Freeman & Brooks in the construction of the Chemistry Building.

The cause was referred to the master in chancery with directions to report his conclusions of law and fact. The master reported no conclusions of fact, but found as a matter of law that the equities were with appellant and recommended that the cross-bill be dismissed for want of equity and that the injunction, as prayed for in the original bill as amended, issue. The exceptions of the Alexander Lumber Company to the master's report were sustained by the chancellor upon the hearing and a decree was entered providing for a money judgment in favor of the Alexander Lumber Company against appellant and Freeman & Brooks

and dismissing the original bill as amended for want of equity.

The contention of appellant that it was induced to execute the bond in question by a misrepresentation of the amount of indebtedness due the Alexander Lumber Company from Freeman & Brooks is not sustained by the evidence. It is uncontradicted that the Alexander Lumber Company was one of the largest dealers in building materials in the vicinity of the Cities of Champaign and Urbana and that Freeman & Brooks were a contracting firm in good standing and executing large contracts. At the time the bond was executed, Freeman & Brooks were constructing the Champaign high school costing approximately $250,000, the Illinois Building costing $100,000, and a number of other large buildings. In July, 1914, the University of Illinois received bids for the construction of two buildings, one known as the Chemistry Building and the other as an addition to the Administration Building, and the bids of Freeman & Brooks were accepted at the total sum of $294,653. The University required that a bond be executed by the successful bidder to insure the faithful performance of the contract. The local agent for appellant, Mr. D. G. Swannell, solicited Freeman & Brooks for the purpose of furnishing the required bond, whereupon an application was made to appellant for a bond in the penal sum of $300,000. Accompanying the application was a statement by Freeman & Brooks of their assets and liabilities. The assets were placed at $100,000 and the liabilities at between $25,000 and $35,000. This statement was investigated by appellant and no claim is made by it and there is no evidence tending to show that the statement was incorrect. The home office of appellant at Hartford, Connecticut, declined to issue a bond for this amount. Swannell learned that another contractor by the name of Stoolman had gone to the Chicago office of appellant and made an effort to prevent it from executing

the bond and thereupon he and Mr. R. S. Bassett, who was the district manager of the Alexander Lumber Company, went to the Chicago office of appellant to interview its officers there in regard to executing the bond for Freeman & Brooks. Before going to Chicago with Swannell, Bassett interviewed Professor White who had charge of the letting contracts by the University, with the object in view of having the contracts for the two buildings separated in case Freeman & Brooks could not procure a bond sufficient to cover a contract for both buildings. Professor White consented to a separation of the contracts, and that the one for the building of the addition to the Administration Building might be given to English Brothers, a contracting firm, at the price of the bid made by Freeman & Brooks. English Brothers consented to enter into a contract for the construction of the addition to the Administration Building for the amount mentioned in the bid of Freeman & Brooks, and separate contracts were subsequently executed in this manner for the construction of the two buildings. At the office of appellant in Chicago, Swannell and Bassett met Mr. E. O. Wagoner, appellant's superintendent of agents, and Mr. Charles E. Bennett, its manager. Wagoner testified that Bassett stated at this meeting, in substance, that he was interested in having Freeman & Brooks procure the bond because the Alexander Lumber Company expected to sell that firm lumber to be used in the construction of the buildings. He further testified that the reason appellant had declined to execute the $300,000 bond was that the financial statement of Freeman & Brooks was not sufficient to justify it in executing a bond of that size. His version of the conversation in which it is insisted Bassett misrepresented the amount of indebtedness owing from Freeman & Brooks to the Alexander Lumber Company is that Bennett told Bassett that the financial statement made by Freeman & Brooks showed

assets of approximately $100,000 with liabilities between $25,000 and $35,000, and asked Bassett if he thought it was a fair estimate of their financial worth and that Bassett replied: "I would say that was approximately correct." Then Bennett asked Bassett how much of these liabilities was due the Alexander Lumber Company and Bassett replied "that he could not give the exact figure, which was of course impossible, but that it was in the neighborhood of about $10,000." Wagoner further testified that Bassett also stated that if Freeman & Brooks got the contract, the Alexander Lumber Company would extend to them a liberal credit in the purchase of lumber and further testified: "The willingness to extend a liberal credit was not the deciding factor. The question of the $10,-000 credit was not the deciding question altogether. It was a big factor. If a contractor owed too much, the company must always turn down their bond. We were pleased to know the Alexander Lumber Company was willing to extend credit, and pleased to know they did not owe them any more." The witness was asked on a recross-examination, after an adjournment, the following question: "And Mr. Green said to you that the two things here was to show that Mr. Bassett told you that Freeman & Brooks only owed them $10,000, and that you relied upon that?" To which he answered: "No, he did not say those exact words. He said that was one of the main issues, but I knew that myself. He asked me if we did not rely wholly upon that $10,000 credit. I said certainly not, it was not understood we would. He asked me if we did not, and I said we did not rely on that wholly. Of course, the indebtedness had a whole lot to do with it." He further stated on cross-examination: "I testified the reason that Mr. Bennett and I decided to recommend the issuance of this bond was that the Alexander Lumber Company appeared to be backing these people

and willing to give them a very liberal credit." Swannell testified to several versions of what Bassett said in regard to the indebtedness of Freeman & Brooks to the Alexander Lumber Company. "He said, approximately $10,000, or not to exceed $10,000, but I could not tell exactly, or words to that effect. * * * He said he could not tell exactly the exact sum that Freeman & Brooks owed them, but he could give it approximately, and that it would, in my remembrance, not exceed $10,000. * * * I think Mr. Bassett said that he could not give the exact figure of the indebtedness of Freeman & Brooks to the Alexander Lumber Company, but that it was in the neighborhood of $10,000." Bennett testified on direct examination that his recollection was that Bassett said the indebtedness of Freeman & Brooks to the Alexander Lumber Company, was approximately $10,000. On cross-examination he testified: "I believe I did ask Mr. Bassett whether it was $10,000 or $20,000. It is my recollection he replied, 'somewhere between those amounts.'"

Bassett's testimony upon this question is in substance: "He (Bennett) then asked me how much they owed at that time, and I said I did not know; that they had a great many accounts on our books, and that our method of charging estimates for all deliveries made it impossible to compute the indebtedness of any contractor of large operations without a great deal of research. He said, 'Can't you tell whether it is $10,000 or $20,000,' rather sarcastic, and I said 'No, I could not positive, it was somewhere between the two amounts.'"

Wagoner also testified that after Bassett and Swannell had left the office that he and Mr. Bennett discussed the matter of the bond and that Bennett stated to him in substance that since the Alexander Lumber Company was willing to extend a liberal credit to Freeman & Brooks and as it was backing them and

as it was a good sound concern, that he thought it would be best to recommend to the home office the issuance of the bond. Bennett then sent the following telegram to the home office: ''Please rush Freeman & Brooks Reinsurance with all haste. District Manager Alexander Lumber Co. in office now advises they will extend Fifty Thousand credit at any time to these contractors without any advance. Recommends very highly the ability and integrity of these contractors. Would recommend delivery of bond with Reinsurance already obtained.''

An expert accountant testifying on behalf of the Alexander Lumber Company stated that an examination of the books of the company showed that the actual indebtedness of Freeman & Brooks to that concern at the time of the execution of the bond was in fact $13,000. An expert accountant testifying on behalf of appellant stated that his examination of the books showed such indebtedness to be at that time $21,000. Whatever the actual indebtedness might have been, it is apparent that the proofs do not sustain appellant's contention that Bassett made a positive statement that such indebtedness did not exceed $10,000, but on the contrary it is conclusively shown that he stated that he could only approximate it, and, according to Bassett's testimony which is corroborated by that of Bennett, he said it was somewhere between $10,000 and $20,000. It is also apparent that the question of this indebtedness to the Alexander Lumber Company could have had little, if any, influence with appellant in inducing it to execute the bond. Appellant already had before it a statement of the total amount of the indebtedness of Freeman & Brooks and there is nothing in the evidence tending to show that it was in any way incorrect or untrue. This statement showed that the total indebtednes of Freeman & Brooks was at that time between $25,000 and $35,000. It is not claimed that all of the indebtedness which Freeman &

Brooks owed at that time was that which was due the Alexander Lumber Company, so it could make no difference to appellant what portion of the total indebtedness of this firm might be due to the latter company. The testimony of Wagoner and the telegram sent by Bennett would indicate that the statements relied upon, if any, were those to the effect that the Alexander Lumber Company would extend to Freeman & Brooks a liberal credit, and it is not claimed that such credit was not extended.

Appellant contends that as surety on the bond it had a special equity to have the funds paid to Freeman & Brooks on account of the contract for building the Chemistry Building applied in payment for materials furnished in the construction of that building. In order to determine the correctness of this proposition, an examination of the facts as they appear in the record is necessary. The proofs show that, at the time the contract and bond were executed, Freeman & Brooks were constructing a number of other buildings and that the Alexander Lumber Company had been furnishing to this firm lumber and materials used in their construction, and continued to furnish such lumber and materials after the contract and bond were executed. Appellant had not only consented to the Alexander Lumber Company's extending a liberal credit to Freeman & Brooks for lumber and materials to be used in the construction of the Chemistry Building, but the fact that the Alexander Lumber Company had promised to extend such credit was one of the principal inducements to appellant for executing the bond. During the time of the construction of the Chemistry Building, a period of 2 years, Freeman & Brooks paid to the Alexander Lumber Company altogether $26,000. These payments were applied by the Alexander Lumber Company to the extinguishment of the oldest accounts with Freeman & Brooks as they matured. The payments were made by Freeman & Brooks to

the Alexander Lumber Company by check and Freeman & Brooks had never directed the application of any of those payments. The checks were drawn upon the general banking account of Freeman & Brooks, and during the time of the construction of the Chemistry Building they kept but one general bank account in which was deposited all the moneys received by them on account of all their contracts and from all other sources. During this time the sum of $281,161.01, which was derived from other contracts and sources in no way connected with the Chemistry Building, were deposited in this general banking account, and mingled with the moneys received on the Chemistry Building contract.

The Alexander Lumber Company had no knowledge of the source of the moneys from which the payments to it were made. The Chemistry Building was not a wooden structure and the lumber and materials furnished by the Alexander Lumber Company comprised but a small part of its cost, being less than 10 per cent thereof. It is conceded that the general rule of law is that a debtor in making a voluntary payment can, if he so desires, control and direct the application of the payment, but, if he does not do so, the creditor may exercise that right. It is also conceded that it is a general rule that a surety cannot direct the application of payments made by his principal and that he is bound by any application made by the principal and the creditor, or either. But it is contended by appellant "that the bond being conditioned for the faithful performance of the work by Freeman & Brooks and the surety only agreeing to stand surety for materials for which the principal in the bond was directly indebted by reason of the furnishing of such material in or about the erection or construction of the Chemistry Building, that the surety by virtue of the very contract which he had entered into, and by virtue of

his relation to the parties thereto as surety, had a special equity, which was a property right, in the funds which were derived from Freeman & Brooks from the construction of that building to have the same applied in payment for materials and labor furnished thereon, and that the Aetna Accident & Liability Company was not surety for any other indebtedness whatever of Freeman & Brooks." It is assumed by counsel for appellant in advancing this theory that the $26,000 paid to the Alexander Lumber Company by Freeman & Brooks during the time the Chemistry Building was being constructed were moneys derived by Freeman & Brooks exclusively on account of the Chemistry Building contract. The proofs do not show that any part of this sum was in fact money received by Freeman & Brooks on account of said contract. It is true one of the witnesses for appellant attempted to trace some of the money so received by Freeman & Brooks as having been paid to the Alexander Lumber Company by a process of reasoning which we fail to comprehend and to which we can give but little weight, but the proofs conclusively show that the Alexander Lumber Company had no knowledge of from what source Freeman & Brooks obtained the money paid to it.

The rule as stated in 32 Cyc. 170-172, is as follows:

"Application of payments—(1)  By principal or surety.  Where a surety is liable for a part only of the entire indebtedness of the principal to the creditor, and the principal makes a payment on account of his indebtedness, he is entitled to designate to which particular part of the indebtedness it shall be applied, regardless of the wishes of the creditor, or of the surety.  *   *   *

" (2)  By creditor.  If the principal, when making a payment, omits to designate how he wishes the money applied, the creditor may apply it to any part of the indebtedness of the principal, a surety not having any right to insist upon the application to the debt for which he is liable, nor does it make any difference that

the surety was not aware of the existence of any other indebtedness of the principal than that for which the surety became liable. * * *

"(3) By court. If neither the creditor nor the principal has made any application of a payment made by the latter, and their transactions afterward become a matter of judicial adjustment, the court will apply the payment as equity seems to require, usually to the oldest item, unless the conduct of the parties indicates that payments by the principal were to be credited to later items."

The same rule is announced also in 30 Cyc. 1250-1251. The principles thus announced have been approved by the courts of this State. *Hansen v. Rounsavell,* 74 Ill. 238; *Graff v. Fox,* 204 Ill. App. 598; *Halsted v. Griefen,* 173 Ill. App. 551. They are also supported by the weight of authority. *People v. Powers,* 108 Mich. 339; *Sampson Co. v. Commonwealth,* 208 Mass. 372; *Mack v. Colleran,* 136 N. Y. 617; *Cain v. Vogt,* 138 Iowa 631, 116 N. W. 787; *Kortlander v. Elston,* 52 Fed. 180. Counsel for appellant have cited a number of cases in support of their contention, but an examination of them shows that the rules therein announced are not applicable to the facts in this case.

It is claimed by appellant that the Alexander Lumber Company agreed with Freeman & Brooks that $10,-000 of the funds due the latter and held by the State treasurer could be paid to the Citizen's State Bank on a nonlienable claim for which appellant was not surety, and that such agreement operated to so vary the terms of the obligation of the surety that it became wholly discharged from all liability on the bond, or at least to the extent of the misapplication of the $10,000. The proofs show that during the construction of the Chemistry Building, Freeman & Brooks suffered material losses on account of a strike among the workmen employed thereon and that, after the completion of the building, the Alexander Lumber Company requested

of Freeman & Brooks, and the latter gave to it, an order upon the University of Illinois for the payment of its bill of lumber and mill work furnished by it and used by Freeman & Brooks in the construction of the Chemistry Building. The amount of the order was $15,709.13. It appears also that Freeman & Brooks had borrowed $10,000 from the Citizen's State Bank, which money they used in the construction of said building, and that the University, at the request of Freeman & Brooks, had given the bank an order for the $10,000. The only testimony we have been referred to or that we have been able to find in the record in regard to this transaction is given by Mr. Brooks, who testified that he and an officer of the bank went to Springfield for the purpose of procuring the $10,000 from the State treasurer; that on the train they met Mr. Bassett and Mr. Moore, officers of the Alexander Lumber Company, who were going to Springfield for the purpose of filing a lien for the latter company with the State treasurer for the sum of $15,709.13, the amount in the order above mentioned. Brooks testified further that they all went to the same hotel and that evening he asked Bassett and Moore not to file any lien until after he got the $10,000, and that they agreed not to; that the next morning he and the officer of the bank went to the State treasurer as early as they could get in his office and procured the $10,000. It does not appear from the record that any such contention as now made in regard to this transaction was made in the court below. The transaction is not referred to in the original bill as amended nor in the answer of appellant to the cross-bill. No issue was made in the pleadings touching this matter. It is elementary that the bill must allege all facts necessary to entitle the complainant to relief. If the knowledge of this transaction only came to appellant after the same had been developed by the evidence, then, if it had desired to take

advantage of it or seek any relief by reason thereof, it should have amended its bill and alleged the facts. *Taylor v. Taylor,* 259 Ill. 524; *Koch v. Roth,* 150 Ill. 212; *Booth v. Wiley,* 102 Ill. 84; *Jefferson v. Kennard,* 77 Ill. 246.

It is contended that part of the indebtedness in question was for extras not contemplated by the contract. The contract itself provides for the making of alterations and the method for determining the cost thereof.

It is also urged by appellant that the decree cannot be sustained in the absence of allegation, proof and determination of the rights of other materialmen and laborers interested in the Chemistry Building contract. If there is any error in this regard, it is at the fault of appellant who filed the original bill and it cannot now complain of the insufficiency of the allegations of its own bill. The bill sought relief only as against the Alexander Lumber Company and introduced evidence only in regard thereto and the court could consider only the issues presented.

The decree of the Circuit Court is affirmed.

*Affirmed.*