**Dorothy Fenberg, Appellant, v. Alan Rosenthal, Appellee.**

**Gen. No. 45,762.**

Opinion filed December 9, 1952. Rehearing denied December 23, 1952. Released for publication December 23, 1952.

JOSEPH D. RYAN, of Chicago, for appellant.

WYATT JACOBS, of Chicago, for appellee; CHARLES E. HECKLER, and JOSEPH B. LEDERLEITNER, both of Chicago, of counsel.

MR. JUSTICE TUOHY delivered the opinion of the court.

Plaintiff sued defendant charging willful and wanton misconduct in the operation of his car as a result of which she, while a passenger in the car, was injured. From a judgment entered on a verdict finding defendant not guilty plaintiff appeals.

Plaintiff contends that the verdict is against the manifest weight of the evidence.

The accident happened between 1:30 and 2:30 a.m. June 29, 1947. Plaintiff, a 24-year-old unmarried woman, had come with her sister to Chicago from Memphis, Tennessee, on the evening preceding the accident, and prior to her coming it had been arranged for her to be introduced to defendant, a 26-year-old unmarried man. Plaintiff and defendant were returning from a date, which had included stops at an inn northwest of Chicago and at a side road parking place afterward. They were homeward bound in a southerly direction on Skokie highway, a 4-lane concrete roadway, when it commenced to rain very hard, causing poor visibility. Defendant was driving a new Chevrolet club coupe. The mechanical condition of the car was good, and the lights and windshield wipers were in working order. The major conflict of fact involves the speed of and manner in which defendant operated

his car. Plaintiff testified that she looked at the speedometer once and "it was 40 or more"; that she asked defendant to slow down and "he would slow down" when she asked him; that he went off the pavement onto the shoulder twice before the accident; and that she was cautioning him again to slow down when he headed into the oncoming northbound car. Defendant testified that the rain affected visibility to the extent that he could see only from 30 to 40 feet in front of his car; that he was compelled to guide himself by watching the righthand side of the road; that his car went off the pavement, and in attempting to bring it back onto the slab "the car seemed to slide in an easterly direction" and careened across from the southbound into the northbound lane; that at the time he was driving approximately 12 to 15 miles an hour. He stated that he had been driving in the rain 20 minutes or half an hour before the accident and denied that he had been off the road any time other than the one time just before the collision.

██ Plaintiff insists that the willful and wanton character of the accident is emphasized by an alleged occurrence at the roadside parking place before they started back to Chicago. According to plaintiff, defendant had attempted to take unwarranted liberties, which she repulsed. The argument is made that he was resentful at having been rebuffed and that this occasioned reckless driving. Defendant denies that he made any improper overtures or that any incident causing anger or resentment occurred. He insists that his difficulty in driving was occasioned solely by the abnormal weather conditions. We think, after a review of all the facts and circumstances of the case, that the question of whether or not defendant was guilty of willful and wanton conduct in the operation of his automobile at the time and place of the accident was a matter for the jury, and we are unable to say that

the jury's finding in this respect is against the manifest weight of the evidence.

Plaintiff complains there was error in the refusal of the court to admit competent and material testimony.

 The automobile with which defendant's car collided was driven by Mrs. Margaret Sliker. She testified by way of deposition on behalf of defendant, fixing the speed of defendant's automobile immediately before the accident at about 20 miles an hour, stating that prior to the accident she had not observed any southbound automobiles weaving in and out of traffic. Over objection, it was developed on cross-examination that she had been paid $700 by the defendant or his representative for medical expenses necessitated by injuries received in the accident. Upon the trial the court, out of the presence of the jury, sustained objections to questions in the deposition seeking to establish the payment of this money. Plaintiff claims that the exclusion of this testimony was error. She maintains that it was for the jury to determine whether or not this payment affected the credibility of the witness. Defendant, on the other hand, insists that the payment, being in the nature of settlement of a controversy, was inadmissible for any purpose. We are thus faced with an apparent conflict between two well established legal principles, the one that it is always permissible to prove payments of money to a witness for the purpose of showing interest or bias, thus reflecting upon credibility (*West Skokie Drainage Dist. v. Dawson,* 243 Ill. 175, 182; *Schuman v. Bader & Co.,* 227 Ill. App. 28, 31); the other that offers of compromise or settlement are never admissible in evidence (*Edwin S. Hartwell Lumber Co. v. Bork,* 138 Ill. App. 506; *Graff v. Fox,* 204 Ill. App. 598).

The case of *Jacobson v. Chicago Motor Coach Co.,* 328 Ill. App. 131, is the only case in this State where

we find the question here presented to have been passed on. The court in that case held it error to have permitted the previous settlement with a witness injured in the same accident to be shown on cross-examination, citing 31 C. J. S. sec. 292, p. 1055, where the general rule is stated as follows:

"A settlement between a party and a third person cannot be shown, even though it relates to the matters involved in the action and the person with whom the compromise was made was in the same position as the party seeking to show such settlement. The rule above stated may be subject to exceptions under unusual circumstances."

This rule finds strong support in the following cases: *Georgia Ry. & Elec. Co. v. Wallace & Co.*, 122 Ga. 547, 50 S. E. 478; *Powers v. Wiley*, 241 Ky. 645, 44 S. W. (2d) 591; *Hawthorne v. Eckerson Co.*, 77 F. (2d) 844; *Ashley v. Safeway Stores*, 100 Mont. 312, 47 P. (2d) 53.

In *Georgia Ry. & Elec. Co. v. Wallace & Co., supra,* plaintiff sought to show on cross-examination that defendant's witness had received a money payment in settlement of damages suffered in the same accident. The court, holding this evidence inadmissible, said:

"It costs time, trouble, and money to defend even an unfounded claim. Parties have a right to purchase their peace. The fact that they have entered into negotiations to secure that end, and admissions or propositions made with the view to a compromise, are not admissible in evidence for or against either litigant, in the event there is a failure to adjust and suit follows. For a much stronger reason, evidence of a settlement with a third person injured in the same casualty ought to be excluded. * * * The rule against allowing evidence of compromises is founded upon recognition of the fact that such testimony is inherently harmful, for the jury will draw conclusions there-

from in spite of anything said by the parties at the time of discussing the compromise, and in spite of anything which may be said by the judge in instructing them as to the weight to be given such evidence.''

In *Powers v. Wiley, supra,* a witness called on behalf of defendant had been a passenger in the car with which defendant's car collided and plaintiff sought to cross-examine him as to a settlement with defendant prior to trial in which he had received $1,500. The court there commented:

''The rule is well settled that, if in the same accident two or more persons are injured, a compromise with one cannot be shown in an action by the other. * * * The reason for the rule is that the law favors the settlement of controversies out of court, and, if a man could not settle one claim out of court without fear that this would be used in another suit as an admission against him, many settlements would not be made. For this reason, offers of compromise are always held inadmissible, and for the same reason a man's buying his peace from one party can no more be used against him in the suit of another party than the defendant could use the settlement against the plaintiff in the action to reduce his recovery if for only a nominal amount.''

The court refused to admit such testimony, saying:

''It is insisted, however, that the evidence should be admitted to show Hall's bias. But that was not the real object in getting the matter before the jury. The real effect of the evidence, if admitted, would have been to advise the jury that Wiley had admitted liability to Beutel and Hall. The fact that Hall had received a part of the money that Wiley had paid in this settlement did not really go to his credibility. The fact that he had been settled with simply showed that he had no further interest in the matter.''

In *Hawthorne v. Eckerson Co., supra,* plaintiff's car collided with defendant's car. Plaintiff and her pas-

senger, Miss Kellogg, were both injured. Defendant's car was driven by one A. J. Gassett, its employee. One of the questions involved Gassett's authority to drive defendant's car at the time and place of the accident. Plaintiff was permitted over objection to prove that defendant had made a settlement with plaintiff's passenger, Miss Kellogg, both in order to show that Gassett was defendant's agent and also to show liability. JUSTICE AUGUSTUS HAND, speaking for the court, said:

"The defendant complains because the court permitted the plaintiff to prove the settlement with Miss Kellogg, both in order to show that Gassett was its agent and also to show liability. We think the rulings in this respect were erroneous. Compromises are not in themselves evidence as admissions of liability, and the same rule applies when they are offered as proof of agency."

The court there cited with approval the rulings in *Georgia Ry. & Elec. Co. v. Wallace & Co.* and *Powers v. Wiley, supra.*

In the case of *Hill v. Hiles,* 309 Ill. App. 321, it was held error to have permitted defendant to prove that the plaintiff paid the cost of repairing damages to the parked car with which plaintiff's car collided, the court stating at page 331:

"The Illinois courts have consistently refused to permit evidence of mere offers and negotiations for settlement to reach the jury on the ground that public policy favors the settlement of claims outside of court. * * * We think that this same public policy applies when an actual settlement is made with a third party."

While no question of interest or bias of a witness was involved in the last-cited case, the reasoning is nevertheless indicative of the fact that our courts are firmly committed to the principle that offers of compromise or settlements with third persons are not admissible.

517

Plaintiff cites authority to the contrary, most of which stems from *Gurley v. St. Louis Transit Co.* (Mo. App.), 259 S. W. 895, and *Etheredge v. Gordon Const. Co.,* 62 Wash. 256, 113 Pac. 639, 640. We have examined the cases cited. All are cases where verdicts were affirmed notwithstanding the admission of such testimony; none where the exclusion of such testimony was held error. In each of these cases the courts have been careful to point out that the jury was instructed that evidence of the offer of compromise was admitted solely upon the question of the credibility of the witness and not on the question of liability. We think, however, that such reasoning is not realistic, for, as pointed out in the cases committed to contrary doctrine, it is a practical impossibility to eradicate from the jury's minds the consideration that where there has been a payment there must have been liability. We see no reason to depart from our former ruling in the *Jacobson* case. We are of the opinion that the more substantial authority supports the conclusion that the rule permitting payments to a witness to be shown for the purpose of determining whether such payments affect credibility must yield to the public policy inherent in the other rule that offers of compromise and settlement with third persons may not be shown except under unusual circumstances. Such unusual circumstances exist where some species of fraud or other questionable practice is indulged in to procure or influence such testimony. If such claim is made the trial court should hear testimony of the alleged misconduct out of the presence of the jury and rule on a motion to strike, preliminary to the testimony being offered in evidence. However, no such unusual circumstances are found or claimed to be present in the instant case.

 Plaintiff complains that certain instructions are erroneous. In the instant case 38 instructions were tendered to the trial court. Of these plaintiff offered

21. Of the 38 instructions tendered 27 were given to the jury, 13 on behalf of plaintiff and 14 for the defendant. We have frequently criticized the practice of submitting an excessive number of instructions to the trial court, and such practice may be indulged in only at the risk of some intruding inaccuracies. We have carefully examined the instructions in the instant case and we are of the opinion there was no reversible error in the giving or refusing of the same. In this case the weight of the evidence supports the verdict of the jury. As the court said in the case of *Farmer v. Davis,* 289 Ill. 392:

"One or two of the five instructions complained of may be subject to criticism, but where the evidence warrants the verdict a decree will not be reversed for inaccuracies in instructions. There is no reason to believe a different verdict and decree might have resulted if none of the instructions complained of had been given. Courts of review reverse for only such errors as may have been prejudicial to the party complaining."

The judgment of the superior court of Cook county is affirmed.

*Judgment affirmed.*

ROBSON, P. J. and SCHWARTZ, J., concur.