## Ferry's Administrator v. Louisville Railway Company, et al.

(Decided September 28, 1915.)

### Appeal from Jefferson Circuit Court
(Common Pleas No. 1).

1. **Trial.**—The court did not err in refusing to permit the plaintiff to ask his own witness if the defendant had compromised with him a claim for injury resulting from the same accident out of which grew the plaintiff's suit for damages for the death of his intestate.

2. **New Trial—Newly Discovered Evidence.**—The court did not err in overruling plaintiff's motion for a new trial on the ground of newly discovered evidence where it appeared from affidavit of plaintiff's counsel that he was informed of the new evidence before the trial was concluded, and took no steps before its conclusion to avail himself of the new evidence.

ISAAC SHERMAN for appellant.

FRANK P. STRAUS and HOWARD B. LEE for appellees.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

The appellant as administrator sued the appellee, Louisville Railway Company, to recover damages for the death of his 13-year-old son, Joseph Ferry. The death resulted from a collision of a street car with Heins' delivery wagon, in which the boy was riding.

The accident occurred on Market Street between Shelby and Campbell. Market Street at this point is 90 feet wide and the block between Shelby and Campbell measures about 500 feet. John Heins has a grocery store on south side of Market and about 200 feet from the corner of Campbell. The delivery wagon had a canopy top with enclosed sides and was in charge of John Embry

Heins, his 13-year-old son, and, just previous to the accident, was standing at the curbing in front of the Heins store. The Heins and Ferry boys had loaded the wagon with groceries for delivery out on Shelby Street. When they got into the wagon the car was stopped at the Shelby Street crossing. The Heins boy was driving, and he never looked for it or saw it again until the collision. The car was east bound, that is, toward Campbell Street. The car traveled something like 300 feet from Shelby when it collided with the delivery wagon, approximately in front of the Heins store, and the Ferry boy was thrown under the car and killed.

There have been two trials of this case. The first resulted in a hung jury, and at the second the jury returned a verdict for the street car company, and the administrator appeals. Two grounds are urged for reversal: (1) Refusal of the court to permit appellant's witness, Murray, a passenger on the car, to testify that the company had settled with him for the injuries he received in the collision; (2) refusal to grant a new trial on the ground of newly discovered evidence.

The theory of appellant is that the wagon started from Heins' store and was crossing the south side track, in front of the store, in order to go down Market on the north side of Shelby; that the motorman negligently failed to see them and was running the car at an excessive and dangerous rate of speed. The theory of the company is that the wagon had already crossed the south track. Boyer, the motorman, says he saw them coming toward Shelby Street on the north track and other witnesses corroborate him in the statement that at or about 20 or 30 feet in front of the car, which was moving east, the wagon suddenly turned across on the south side track so close to the approaching car that it was impossible to avoid the collision. There was evidence to support both of these theories, and the question as to which of the two chains of circumstances caused the accident was properly submitted to the jury, and they found for the street car company. The effect of their finding was that the collision was due to the boys suddenly, and unexpectedly to the motorman, turning their horse and wagon across the track in front of the approaching car. There is no contention that the evidence was insufficient to support the verdict, and we are not asked to reverse the case for that reason.

With reference to the first error assigned, Murray was introduced as a witness by appellant. Murray says he boarded the car at Shelby and Market and after standing a little while on the back platform, walked through the aisle to the front of the car, and had just reached the front platform when the crash came. The impact threw him down and the motorman fell on top of him. By introducing Murray as a witness the appellant, in effect, vouched for his credibility. Nothing transpired during the trial to give appellant the right to sustain his witness by proof of character or other circumstances tending to strengthen his credibility. Neither was it permissible for appellant to impeach his own witness. Appellant on direct examination, without objection, asked Murray if he had made a claim against the company for the injury he received when the motorman fell upon him. Answering in the affirmative, he was then asked by appellant, "Was that claim settled with you?" Objection of appellee was sustained to this question. Interrogatories of this sort could have been permitted only for the purpose of affecting the credibility of the witness, and such a line of questioning could not properly come from appellant with reference to his own witness. Neither was it competent for the purpose of showing that appellee had admitted responsibility for the accident in having compromised a claim growing out of it. We are of opinion that the court did not err in sustaining appellee's objection.

Appellant insists that the court should have granted a new trial because of newly discovered evidence. This evidence was presented in the form of affidavits on the motion for a new trial, and from them it appears that at the conclusion of the evidence, and while the court was taking a short recess to prepare instructions, Joseph Schmitt and counsel for appellant went into the toilet room. While they were in there, William M. Boyer came into the room. Boyer was the motorman, and a witness for the company. It is alleged the conversation began with the statement from Schmitt that it was a terrible accident, and Boyer replied, "Yes, I would not have had it happen for $600." Schmitt says, "I guess you told all about it." Boyer answered, "I could have told a lot more, but on account of the boy's mother—I felt sorry for her, and did not tell any more; the truth of it all is that the boys were crossing the track two or three times —went across, came back, and went over." Schmitt says, "Did you see all that?" Boyer replied, "Yes, they

were about 100 feet in front of me." Schmitt then asked, "Why did you then not stop the car?" and Boyer said, "If I had had my car under control I could have stopped —if I just had a second longer; it will be on my mind as long as I live." Schmitt then admonished him not to worry about it, and Boyer said he hoped they would get something on account of the mother. Excluding opinions and regrets said to have been expressed by Boyer, the only material fact shown by the affidavit is that Boyer says he saw the boys about 100 feet in front of him, and that they crossed the track two or three times. It should be stated here that appellee filed counter affidavit of Boyer. He admitted a conversation with Schmitt, but denied making the statements set up in Schmitt's affidavit. He says Schmitt asked him many questions about the accident, and that in answer to the questions he gave the same account of the accident which he gave upon the witness stand in both trials of the case.

Counsel for appellant says in his affidavit in support of the motion that he could hear enough to know that Schmitt and Boyer were talking about the case, but he only heard distinctly the beginning and end of it, that is, he heard Boyer say he would not have had the accident happen for money, and that it would be on his mind as long as he lived. He explains that he hurried back into the court room, as the argument was soon to begin, and, without knowing the full purport and significance of the conversation, let the trial proceed, "and it was not until argument was over that the said Schmitt reported to him the full conversation with the said Boyer, and this was the first he had heard of the facts related in the accompanying affidavits." The plain inference from this statement is that Boyer's alleged statements were communicated in full to appellant's counsel before the trial was concluded, although not until the argument was completed. No reason is shown why the facts were not then disclosed to the court.

In Fleet v. Hollenkemp, 13 B. Mon., 223, there was a motion by defendant for a new trial on newly discovered evidence, and it appeared from the affidavit that what the new witness "knew upon the subject was not disclosed to the defendants until their attorney had commenced his argument to the jury." The court in considering the question said:

"Assume these statements to be true, they do not sustain the motion for a new trial; because, 1. If the testi-

mony of Broaddus would have been important in aid of the defense, upon motion to the court, based upon the facts stated, the argument of the case would have been suspended, and Broaddus might have been sworn as a witness, and would have been allowed to give evidence to the jury before their retirement. But, although the witness was present and defendants knew what he would prove before the case had been given to the jury, they did not offer to introduce him."

Substantially the same principle is stated in 29 Cyc., page 885:

"Evidence discovered during the progress of the trial must have been offered, if possible, although out of the regular order of proof, and even during or after argument, or, it seems, after the submission of the case to the jury."

Knowing, before the trial was concluded, of the circumstances relied on in the affidavit, we are of opinion that appellant should have made disclosure to the court, and asked for permission to recall Boyer. By remaining silent and risking an unfavorable verdict from the jury, without the evidence, we do not believe appellant has shown himself entitled to another chance with the evidence.

"Applications for new trials are addressed to the sound discretion of the court, to be exercised according to the rules and usages of law, and the court should regard the substantial justice of the case, equally from favoring negligence or exacting unreasonable diligence." Torain v. Terrell, 122 Ky., 752; L. & N. v. Uelstchi, 126 Ky., 556.

We have already related the substance of all that Boyer testified to about the collision, and what he saw as to the proximity of the boys. Appellant had every opportunity for cross-examination, and availed of it at length. He asked no questions of Boyer that tended to elicit more information along these lines. If he chose rather to wait until witness left the stand and make the inquries outside the court-room, and then failed to apprise or ask the aid of the court, although knowing of the additional evidence before the trial was completed, then we think appellant should abide the result, and there was no abuse of discretion in the court's refusal to grant a new trial.

The judgment is, therefore, affirmed.