## Server v. McGahan.

(Decided Nov. 13, 1934.)

333

B. J. BETHURUM for appellant.

VIRGIL P. SMITH for appellee.

Opinion of the Court by Judge Ratliff—Reversing.

In 1931 Alberta Wilson Server filed suit in the Pulaski circuit court against Berry McGahan to recover a small parcel of land which, it was alleged, McGahan had under fence and in his possession. The parties owned adjoining lots or land and the controversy between them related to the location of the lines. The corners or beginning of the calls in the deed were designated by planted stones. The litigation was determined in favor of Mrs. Server, and it was adjudged that she was the owner of the parcel of land in controversy and McGahan was ejected therefrom. In May, 1932, McGahan filed his action for a new trial upon grounds of newly discovered evidence, under sections 340 and 344 of the Civil Code of Practice. He alleged that in the former action he produced such evidence as was then known to him to establish the lines and boundaries of his land and that the lines were designated by stones at certain corners or ends of lines in dispute; that before the trial he searched for the stones but they were not visible; that he made inquiry as to any one who knew the location of the stones but was unable to ascertain the name of any one who knew about them; that after the trial and about the 1st day of March, 1932, he was informed that Abe Ingram and John H. Love, neither of whom testified on the former trial, knew the location of the stones and could find them, and thereafter Ingram did find the stones which had become covered up by dirt and trash so that they could not be seen by ordinary investigation or diligence but required excavating or digging to find them; and that by the location of said corners as marked by said stones it would be shown that the land in controversy belonged to him.

The Court heard the evidence and sustained McGahan's petition for a new trial and set aside the former judgment and adjudged McGahan to be the owner of the land in controversy, and from that judgment Mrs. Server, defendant below, brings this appeal.

The appellee, McGahan, testified that before the former trial he made investigation in an effort to locate the stones designating the corner or calls in the deed but was unable to find them. We note the following questions and answers thereto:

"Q. Did you make any effort to find the stones marking your line before the first trial? A. Yes.

"Q. Did you find them? A. No, I didn't.

"Q. Why? A. It seemed like there was so much of this old honey-suckle growed up in the fence rows and about that I couldn't find anything of course.

"Q. Did you make any inquiry of anyone who knew about it before the trial, did you try to find someone? A. Yes, but I couldn't get any information for a right smart bit.

"Q. After the trial did you get any information as to anyone who knew about the stones? A. Well, yes. * * *

"Q. I will ask you if he gave you the names of anybody that knew. A. He gave me the names of Abe Ingram who lived on the lots. * * *

"Q. Did you make a diligent search for the stone over there? A. Yes, but I found one before this.

"Q. I am talking about the two stones by the apple tree. A. I done found one before he went.

"Q. After the trial? A. Yes, sir.

"Q. Who told you where it was, did you get information? A. I'll tell you how it was, it come up a big rain and windy day and it blowed all the drift from about the fence, me and Henry Hale looked and seen the top of a square stone about the apple tree, I name it and Henry looked and it was like a corner stone, I got over the fence and looked it was, I don't remember whether he got over there or not but he could see it.

"Q. What kind of a stone was it? A. It was setting down in the ground a large square stone.

"Q. Was that visible before the other trial? A. No, I looked, the trash and stuff there was level of the ground; when that rain come it was a windy day and it blowed it off and it looked like just to help us find it. * * *"

He further testified on cross-examination as follows:

"Q. Were these stones called for in your deed? A. Yes, sir.

"Q. Did you ever go look for any stone before or during the other trial? A. Let me tell you.

"Q. Answer my question, did you ever go and look there before the other trial, look for any stone and make any investigation for any stones? A. Yes, sir.

"What did you do? A. Didn't find anything.

"Q. Did you do anything except just go and look? A. I never dug down, I found one over next by the fence.

"Q. Whenever you went to looking for it, you had no trouble in finding it? A. It was different times we found it.

"Q. You went out to look and you did find them and had no trouble? A. Well, yes, sir.

"Q. What trouble did you have? A. We looked and never could see them, *we never thought about digging for them.*" (Our italics.)

He further testified, in substance, that he found the stone at a corner called for in this deed, and that he had the deed in his possession and could read, and that the calls in the deed were designated by stones and he could have found them by digging down or removing the leaves or other substance, and that he did not notice in the deed where it called for the four stones until after the trial. He was asked:

"You could have readily found out from reading that deed it did call for these stones? A. I could by looking.

"Haven't you been a farmer all of your life and haven't you had calls for stones and don't you know that it is generally true that when a stone is put down for a marker of lines, that it sets in trash and shrubbery and it often covers them up, and you have to go and dig and find them? A. Yes, sir.

"Q. Yet you knew your deed called for stones and you never did that before the trial? A. I just looked on top of the ground."

He was asked to describe the stones he found there, and he said, "They showed they were stones," and were at the place called for in the deed. But he saw no marks on them indicating that they were intended for corner stones and that he never took them up, and that he didn't know whether or not they were corner stones. He testified that on the former trial he introduced his deeds which called for the corner stones.

Abe Ingram testified for McGahan that he and his father once owned the lots in controversy and he knew where the corner stones in question were planted. He testified that he or his father placed the stones at their location. He first stated that he put them there himself, and later he said his father placed them at their locations. He stated that he was not consulted or asked about the locations of the line or the stones before the first trial, but some time after the trial Mr. McGahan asked him about the lines and corner stones and he told Mr. McGahan he knew where they were and he went with Mr. McGahan upon the property and by "diggin'" down a little" or removing some dirt, leaves, etc., he found the stones. But Ingram, of course, did not know what effort was made by McGahan before the first trial to find the stones.

The decisive question in this case is whether or not McGahan used due diligence before the first trial to locate the stones designating the calls in his deed. He admits that he had the deed in his possession and could read, but that he did not give much attention to the deed with reference to the stones mentioned. He knew the approximate location of the stones, but according to his own testimony he merely made a casual view and not being able to see them above the surface he took it for granted that he could not find them and did not as much as attempt to remove the leaves or make any search whatever. It is obvious from his own testimony that had he made a diligent search for the stones he could have found them before the former trial, even without the information or assistance of Ingram.

It is the well-settled rule that applications for a new trial on the ground of newly discovered evidence are not favored and should be discouraged, and new trials based

on this ground are reluctantly granted, and, when disputed matters have been fully litigated, the courts will not reopen a case for the purpose of enabling the defeated party to introduce new evidence unless the reasons therefor are very strong. Woods v. Kentucky Traction & Terminal Co., 252 Ky. 78, 65 S. W. (2d) 961.

In Quick v. Stanley, 217 Ky. 176, 289 S. W. 224, 225, in discussing an application for a new trial, we said:

"But he chose to take his chances with the evidence he had and to make an investigation later. Parties are not permitted thus to speculate with a trial and accept the verdict, if satisfactory, or reopen it, if upon later investigation they think a different result may be obtained."

And citing Fleet v. Hollenkemp, 13 B. M. 220, 56 Am. Dec. 563; Mason v. Mason, 5 Bush, 187; Ferry's Adm'r v. Louisville R. Co., 165 Ky. 747, 178 S. W. 1087; Louisville & N. R. Co. v. Ueltschi's Adm'r, 126 Ky. 557, 104 S. W. 320, 31 Ky. Law Rep. 931.

Measuring the facts of the case at bar to the rule ennunciated in the cases supra, it is obvious that McGahan took his chances on the results of . the former trial by going upon the ground of the location of the stones and merely looking for them. He admitted that from his knowledge of calls in deeds indicated by stones that such stones frequently became covered with dirt, leaves, or other substances, and it would become necessary to remove such substances in order to find such stones, and only assigned for his reason for not making such investigation that he "didn't think about it."

In view of McGahan's own testimony, we are constrained to the conclusion that he did not use such diligence as is required to entitle him to a new trial.

Appellee insists that appellant filed no answer to his petition and that he was entitled to judgment on the face of the pleadings. It appears that when the demurrer was overruled, the case then having been called for trial, counsel for appellant said something about preparing an answer and the court suggested that they go on with the trial and consider the answer in and file it later. There was no question raised about no answer having been filed during the progress of the trial, and this question developed after the trial and when the schedule was filed for an appeal. Numerous affidavits

in the record, including those of counsel for appellant, the trial judge, the official court reporter, and the clerk of the court, satisfactorily show that pursuant to the suggestion of the court the answer was treated as having been filed and was actually filed after the trial. But, be this as it may, the record discloses that the case was tried as though the pleadings were made up and no question was raised in the lower court as to the alleged failure to file an answer. The petition was treated as controverted during the trial and cannot be treated otherwise here. Glens Falls Ins. Co. v. Elliott, 223 Ky. 205, 3 S. W. (2d) 219; Fitzpatrick v. Vincent, 88 S. W. 1073, 28 Ky. Law Rep. 121; Carter Coal Co. v. Bays, 183 Ky. 29, 208 S. W. 1.

For reasons indicated the judgment is reversed, and the cause remanded, with instructions to set aside the order granting the appellee a new trial and to reinstate the former judgment.