John Hill and Frances Hill, Appellants, v. Norbert Hiles, Appellee.

 Opinion filed March 1, 1941.

CHESTER H. FARTHING, of Belleville, for appellants.

KRAMER, CAMPBELL, COSTELLO & WIECHERT, of East St. Louis, for appellee.

MR. JUSTICE DADY delivered the opinion of the court.

Plaintiffs, John Hill and Frances Hill, his wife, bring this appeal from a judgment of the trial court entered against plaintiffs on a verdict finding defendant not guilty in an automobile accident case. The accident occurred in the city of Belleville, on October 8, 1938, about eight p. m., and each plaintiff was very seriously injured.

Plaintiff John Hill was driving his car east on Main street with his wife as a passenger. They were on a joint mission. Main street is a paved State highway known as route 15, is about 60 feet in width from curb to curb, and is divided into two 27½ foot one-way traffic lanes by a 5-foot unpaved parkway, the northerly lane being for westbound traffic and the southerly lane for eastbound traffic. Ninety-sixth street is a northerly and southerly paved street 25 feet in width which enters Main street from the north and ends at Main street. To allow southbound traffic on Ninety-sixth street to cross to the southerly lane of Main street, there is directly south of the southerly end of Ninety-sixth street a 50-foot paved opening in such parkway. There is no stop sign on Main street. There is a stop sign on the west side of Ninety-sixth street, which sign is 43 feet north of the north curb of Main street and 25 feet north of the

southeast corner of a drug store building facing south on Main street. The distance between such building and the north curb of Main street is about 14 feet.

Immediately prior to the accident the defendant drove his car southerly on Ninety-sixth street into Main street and through such opening in the parkway and then turned east on Main street in front of plaintiffs' car.

The complaint alleged that the defendant so carelessly and negligently drove his automobile southerly on Ninety-sixth street and thence onto Main street, that he caused it to suddenly turn east in front of the automobile of the plaintiff John Hill, who was then driving easterly on Main street, and that the plaintiff John Hill in order to avoid a collision with the automobile of the defendant was forced to suddenly turn his automobile in a southeasterly direction and thereby struck another automobile parked on the south side of Main street.

The sixth paragraph of the complaint further alleged that the Division of Highways of the State had, pursuant to law, erected a stop sign on Ninety-sixth street on the northerly side of Main street, and that the defendant drove his automobile into Main street without stopping the same at said intersection. Undisputed evidence showed the erection of such stop sign as alleged.

John Hill testified that immediately prior to arriving at the intersection he was driving about 35 miles per hour; that he was from 5 to 10 feet west of the opening in the parkway when the defendant came out of Ninety-sixth street between Hill and the east side of the opening in the parkway and swerved to the defendant's left in front of the Hill car, and that Hill then swerved to his right to avoid striking defendant's car and crashed into a car parked on the south side of Main street. The record shows the front end of such parked car was about 88 feet east of the east edge of

the opening in such parkway. Hill further testified
that in entering such eastbound traffic lane the defend-
ant came "clear over to where such parked car was,"
. . . "completely over to the right to make the
turn"; that defendant gave no warning or signal "be-
fore he came out there or as he came out there"; that
when Hill first saw the defendant's car it was in his
path making a left turn, about 5 or 10 feet from the
Hill car and going about 25 or 30 miles per hour.

Frances Hill testified that when she and her hus-
band got in front of the drug store building defend-
ant's car came out in front of them at an angle, and
her husband then swerved his car and struck the
parked car and she was rendered unconscious.

Victor Batha, a witness for plaintiffs, testified that
he was a friend of defendant; that he saw defendant
drive south from Ninety-sixth street; that he first saw
defendant's car when it was 4 or 5 feet south from
the north curb of Main street and that he saw the
collision; that defendant "didn't make any stop any-
where near the curb of Main Street" before coming
into Main street; that defendant "pulled out in front
of Mr. Hill's car"; that defendant "just zoomed out
into Main Street"; that defendant "made a second
gear stop in the middle of the street, but he never
stopped, he just zoomed through."

The defendant testified that he stopped on Ninety-
sixth street within about 10 feet of Main street, about
10 feet north of the north Main street curb, and that "I
stopped at the parkway, not what you call a dead stop,
but I wasn't going very much, I wasn't dead stopped."

Other witnesses testified for both sides and there
was a conflict in the testimony as to whether defend-
ant so stopped, but in passing upon the issues raised
we do not consider it necessary or material to refer to
such other evidence.

At the conclusion of the plaintiffs' case the court
struck paragraph 6 from the complaint and said to the

jury, "The question of negligence of the defendant as to whether he stopped on Ninety-sixth street on the north side of West Main street is not before you for consideration in this case because the Court holds, as a matter of law, that whether he made that stop sign or not it would not in any way tend to prove that it was the proximate cause or negligence, if there was any, of the defendant in this case and that is entirely eliminated from your consideration," and that such paragraph 6 was stricken and was not to be considered by the jury. We are called upon to pass on the propriety of these rulings.

Section 165 of the Motor Vehicle Act provides that "Except as hereinafter provided motor vehicles traveling upon public highways shall give the right-of-way to vehicles approaching along intersecting highways from the right and shall have the right-of-way over those approaching from the left." Section 167 of the same act provides that "The Department (of highways) may in its discretion and when traffic conditions warrant such action give preference to traffic upon any of the State highways under its jurisdiction, upon which has been constructed a durable hard-surfaced road over traffic crossing or entering such highway by erecting appropriate stop signs or stop lights and in such case vehicles entering upon or crossing such highway shall come to a full stop as near the right-of-way line of such highway as possible and regardless of direction shall give the right-of-way to vehicles upon such highway." The undisputed evidence shows that Main street was given preference as provided by section 167. Inasmuch as section 165 specifically states that it applies "except as hereinafter provided," it must be concluded that section 167 governed, and section 165 had no application to the facts in this case.

If the defendant did not come to a stop before entering the intersection as required by section 167, then

he violated the provisions of section 167. A violation of a statute prescribing a duty for the protection and safety of persons is prima facie evidence of negligence, if such violation caused or contributed to cause the injury. (*United States Brewing Co. v. Stoltenberg,* 211 Ill. 531; *True & True Co. v. Woda,* 201 Ill. 315.) Whether the alleged negligence of defendant in not so stopping was the proximate cause of the injury was under the facts in this case a question of fact for the jury. (*True & True Co. v. Woda, supra.*) What is the proximate cause of an injury is ordinarily a question of fact to be determined by the jury from a consideration of all of the evidence. It can only be raised as a question of law when the facts are not only undisputed, but also such that there can be no difference in the judgment of reasonable men as to the inferences to be drawn therefrom. (*Phillabaum v. Lake Erie & W. R. Co.,* 315 Ill. 131; *Schultz v. Henry Ericsson Co.,* 264 Ill. 156.) In *Wintersteen v. National Cooperage & Woodenware Co.,* 361 Ill. 95, the court said "If a reasonably prudent person might, and ordinarily would, foresee that the omission to do a certain act or the commission of an act in a certain way would likely result in injury to another, and injury to another does follow as a result thereof, such act of omission or commission is negligence and the proximate cause of the injury."

We believe that the fact that Main street was a preferred street, and the fact that Ninety-sixth street, as it connected with Main street, was not a preferred street, within the meaning of the Motor Vehicle Act, were facts that were material to the issues.

Assuming that defendant did not "come to a full stop as near the right of way line of" Main Street "as possible" and "give the right of way to vehicles upon" Main street, as required by section 167, and assuming that in so doing the defendant "zoomed" into the intersection as testified to by the witness

Batha, and assuming that as defendant made his left turn into the south lane of Main street in front of the Hill car he was going between 25 and 30 miles per hour as testified by John Hill, all of which we are required to assume as true in passing upon such rulings, we cannot say as a matter of law that all reasonable men would agree that defendant was not guilty of negligence which was the proximate cause of the injury, and cannot say that such failure of the defendant to so stop and give preference to traffic on Main street, as required, was not directly connected with and a part of such negligence. Under the terms of section 167, in order to make Main street a preferred street, it was necessary that the Department of Highways erect the stop sign in question. Therefore, it was proper for the plaintiffs to allege and prove the erection of such stop sign, and the trial court erred in striking paragraph 6 of the complaint and in so instructing the jury.

At the conclusion of the case the court, at the request of the defendant, instructed the jury that if the jury believed that the automobile of the defendant entered the intersection before the Hill automobile reached the intersection, then the defendant would have the right of way. The giving of this instruction is assigned as error.

This instruction was based on said section 165 of the statute. Inasmuch as section 165 did not apply to the facts in the case the instruction was not proper and should not have been given.

The defendant contends that the giving of this instruction was at most harmless error because the defendant's car was ''at and through the intersection before'' the Hill car. We do not agree with this contention. The undisputed evidence shows that the front end of the defendant's car crossed the north side of the so-called intersection before the Hill car reached the west side of the intersection. Therefore,

the instruction in effect told the jury that the defendant, under the facts in the case, had the right of way and that the Hill car did not have the right of way. The instruction emphasized the importance of the right of way and was very misleading. Even if Main street had not been a preferred street the instruction was an inaccurate statement of the law. The statute does not authorize the assertion of the right of way regardless of circumstances, distance or speed. (*Riddle v. Mansager*, 254 Ill. App. 68; *Scott v. Vurdulas*, 264 Ill. App. 495.)

Over the objection of plaintiffs the court permitted the defendant to prove that the plaintiff John Hill paid the cost of repairing the damages to the parked car which plaintiff's car ran into. Plaintiffs urge that the court erred in admitting this evidence. Defendant argues that such payment could be construed as an admission of negligence by plaintiffs which would preclude them from recovering in their action against defendant.

It should be observed at the outset that the payment was made by the plaintiff John Hill, and that there is no evidence that the plaintiff Frances Hill authorized such payment. In this state of the record we do not see how under any theory this evidence could have been competent against the plaintiff Frances Hill. However, in the view we have taken of the case we do not believe that this evidence was competent as to either party.

The only Illinois case called to our attention as bearing on the question whether a payment made to a party involved in an accident may be competent as an admission of liability upon the part of the person making such payment in a suit brought or defended by another party involved in the same accident, is *Chicago City Ry. Co. v. Cooney*, 95 Ill. App. 471, in which case the trial court admitted evidence of a settlement made by the defendant with another passenger

involved in the same accident. Although the Appellate Court did not consider the error sufficient for reversal, this statement appears at page 477 of the opinion: "We are inclined to view the testimony of Miss Gebhard, a witness called by appellee, who was upon the car in question and was also injured, to the effect that the appellant company had settled with her for her injury, as incompetent and improperly admitted over the objection of counsel for appellant."

The question has been fully considered by the courts of highest authority in a number of other jurisdictions and it has been generally held that evidence of settlements made with third parties involved in the same accident is inadmissible.

In *Powers v. Wiley*, 241 Ky. 645, 44 S. W. (2d) 591, the court says: "The rule is well settled that, if in the same accident two or more persons are injured, a compromise with one cannot be shown in an action by the other. 22 C. J. p. 320, Par. 354, note B, and cases cited: *Ferry's Adm'r v. Louisville Railway Co.*, 165 Ky. 747, 178 S. W. 1087. The reason for the rule is that the law favors the settlement of controversies out of court, and, if a man could not settle one claim out of court without fear that this would be used in another suit as an admission against him, many settlements would not be made. For this reason, offers of compromise are always held inadmissible, and for the same reason a man's buying his peace from one party can no more be used against him in the suit of another party than the defendant could use the settlement against the plaintiff in the action to reduce his recovery if for only a nominal amount."

The principle underlying the rule excluding such evidence is stated by Justice LAMAR in the case of *Georgia Ry. & Elec. Co. v. Wallace & Co.*, 122 Ga. 547, 50 S. E. 478: "It costs time, trouble and money to defend even an unfounded claim. Parties have a right to purchase their peace. The fact that they have

entered into negotiations to secure that end, admissions, or propositions made with a view to a compromise are not admissible in evidence for or against either litigent, in the event there is a failure to adjust and a suit follows. For a much stronger reason, evidence of a settlement with a third person injured in the same casualty ought to be excluded. . . . The rule against allowing evidence of compromise is founded upon recognition of the fact that such testimony is inherently harmful, for the jury will draw conclusions therefrom in spite of anything said by the parties at the time of discussing the compromise, and in spite of anything which may be said by the judge in instructing them as to the weight to be given such evidence.''

Other cases in which such evidence has been held incompetent are: *Ferry v. Louisville Ry. Co.*, 165 Ky. 747, 178 S. W. 1087; *Colburn v. Town of Groton*, 66 N. H. 151, 28 Atl. 95, 22 L. R. A. 763; *Hanks v. Yellow Cab & Baggage Co.*, 112 Kan. 92, 209 Pac. 977; *Cargall v. Riley*, 209 Ala. 183, 95 So. 821; *Hawthorne v. Eckerson Co.*, 77 F. (2d) 844; *Ashley v. Safeway Stores*, 100 Mont. 312, 47 P. (2d) 53; *Curtis v. McAuliffe*, 106 Cal. App. 1, 288 Pac. 675.

The Illinois courts have consistently refused to permit evidence of mere offers and negotiations for settlement to reach the jury on the ground that public policy favors the settlement of claims outside of court. (*Gehm v. People*, 87 Ill. App. 158; *Edwin S. Hartwell Lumber Co. v. Bork*, 138 Ill. App. 506; *Graff v. Fox*, 204 Ill. App. 598.) We think that this same public policy applies when an actual settlement is made with a third party. A person making such a settlement should not be required to explain his conduct before a jury where apart from the mere act of payment there is no other act or statement on his part which could be construed as an admission of liability. If such evidence is not excluded and is allowed to go to

the jury it may be extremely prejudicial even where an explanation is made showing that the only purpose of the payment was to avoid litigation without reference to the question of liability.

We do not regard it as material in the instant case that so far as the record shows the payment was made by the plaintiff John Hill before the owner of the parked car had started or threatened any litigation. In this connection we agree with the statement made by the court in the case of *Finn v. New England Telephone & Telegraph Co.*, 101 Me. 279, 64 Atl. 490: "In cases of tort the proper rule should be that, when a party has reasonable grounds for anticipating that a demand will be made against him for damages, the claim may then be said to so far exist as to authorize him, without any move on the part of claimant, to seek a settlement of it and to be protected in so doing by the general rules of law applicable to compromise settlements." There can be no question in the instant case that the plaintiff John Hill had reasonable grounds for anticipating that the owner of the parked car might make a claim against him for damages.

We think that the rule as announced in the foregoing cases excluding evidence of settlements made with third parties is a sound one and should be applied to the instant case. We hold that it was error for the trial court to admit this evidence.

Because of the errors indicated, the case will be reversed and remanded.

*Reversed and remanded.*