GASLITE ILLINOIS, INC., Plaintiff-Appellant, *v.* NORTHERN ILLINOIS GAS CO., Defendant-Appellee.

Second District (1st Division)   No. 75-286

Opinion filed December 28, 1976.—Modified upon denial of rehearing April 20, 1977.

918

Robert E. Pfaff and Lisa M. Hill, both of Jenner & Block, of Chicago, and Hall, Meyer, Fisher, Holmberg, Snook & May, of Waukegan, for appellant.

Patrick W. O'Brien, Henry F. Field, and Thaddeus J. Marciniak, all of Mayer, Brown & Platt, of Chicago, for appellee.

Mr. JUSTICE GUILD delivered the opinion of this court:

The jury herein awarded damages to the plaintiff in the sum of $93,348.73. The court entered judgment on the verdict. Upon post-trial motion the trial court vacated the judgment entered on the verdict and entered judgment for the defendant *non obstante veredicto*. The plaintiff appeals and defendant cross-appeals from the denial of its alternative motion for new trial.

Both plaintiff and defendant have raised numerous issues. However, in view of our decision herein, we shall consider basically only two issues: first, whether the trial court erred in setting aside the judgment entered on the verdict of the jury and entered judgment for the defendant; and second, whether the trial court properly denied defendant's alternative motion for a new trial.

The plaintiff, Gaslite Illinois, Inc. (hereinafter called Gaslite), was organized and incorporated in 1959, its principal business being the distribution and installation of gas lamps or lights. Commencing in the early 1960's, Gaslite provided the installation and distribution of gas lights to the defendant, Northern Illinois Gas Co., (hereinafter NI-Gas), which were promoted and sold by NI-Gas through its employees and salesmen to existing gas customers. As a part of this procedure, in the Spring of each year NI-Gas would distribute with its gas bills a "flyer" setting forth in detail the cost and installation of outdoor gas fixtures. In 1963 this was expanded to include the installation and sales of outdoor gas grills, which were incorporated in the flyers issued by NI-Gas thereafter. It would appear that this arrangement by NI-Gas was a virtually exclusive business with Gaslite. The distribution and the installation of the gas lights and,

subsequently gas grills, proceeded from the early 1960's up until 1970 when Gaslite had approximately 30-35 crews installing gas lights and grills during the spring and summer months. The actual sale of the items was promoted by and through NI-Gas, which would, in turn, upon receipt of orders, inform Gaslite and Gaslite would then send a crew to the NI-Gas customer's home, the equipment would be installed, an order would be signed and Gaslite would invoice it to NI-Gas which would do the actual billing. Gaslite would then be reimbursed or paid by NI-Gas for the gas light or gas grill and the installation thereof.

In September 1970, Mr. Klein, the president of Gaslite, submitted a synopsis of the 1970 campaign to his principal contact at NI-Gas, a Mr. Kaltwasser, who was the supervisor of sales for NI-Gas. The details of the upcoming 1971 campaign were discussed and Gaslite provided tentative prices for the items which would be firmed up at the end of the year when the actual figures were obtained from its suppliers. In November 1970 NI-Gas had a meeting with its suppliers at Northern Illinois University in DeKalb which Klein attended. At that meeting NI-Gas representatives announced that they intended to have a gas light and gas grill campaign beginning on April 1, 1971, and by that time Mr. Klein had seen the NI-Gas' 1971 preliminary plan for the same. Klein testified that in December, 1970 he met with Joseph Gauthier, the president of NI-Gas, and Klein advised Gauthier that he had heard a rumor relative to the upcoming 1971 campaign for the sale of gas lights and grills. Examination of the record indicates that this rumor pertained to a hearing before the Illinois Commerce Commission relative to the curtailment of the use of gas due to the energy crisis. At that time Gauthier advised Klein that NI-Gas expected this issue to be disposed of before the Commerce Commission by the time of the proposed campaign; that they were "holding" but were continuing with their plans for the campaign. Klein testified upon cross-examination that he could not remember whether the actual word "hold" was used. A deposition of Klein was read to Mr. Klein which stated:

> "[NI-Gas] were going before the Commission to lop off the interruptibles and they felt it best to keep a low profile until after the Commission ruling, and that they were hopeful that they would have a ruling before the March kickoff or the April 1st kickoff of the campaign in which case we would go ahead full blast, but there was a temporary hold, that they wanted to keep a low profile during the time they were before the Commission and not give the Commission any cause to come back at them."

Klein further testified that Frank Hartman, the coordinator of gas light and grill sales for NI-Gas, who was responsible for the planning of the gas light and grill campaign, further advised Klein in January, 1971 that NI-Gas was going ahead with its preparations for the 1971 spring sales

campaign. Finally, on March 12, 1971, David Wallin, vice president of marketing for NI-Gas, advised Klein by telephone that the 1971 gas light and gas grill campaign, which was to commence on April 1, 1971, would not proceed as planned. It should be expressly noted at this juncture that NI-Gas had prepared brochures, flyers or mailers for the April 1, 1971, campaign at an expense of $22,000 to NI-Gas. These were not used and the campaign did not proceed.

On May 3, 1971, Klein, by letter, advised Joseph Kaltwasser, the director of sales promotion, advertising and training for NI-Gas, that he would appreciate the payment of an advance of $50,000 to be credited against any settlement agreed upon at a future date. On May 18, 1971, NI-Gas issued a check and paid Gaslite Illinois, Inc., the sum of $50,000 with the following notation thereon:

> "Partial payment for assistance to Gaslite Illinois, Inc. arising out of the curtailment by NI-Gas of the 1971 market plan. Assistance directed to sum listed in letter dated May 3, 1971, from Gaslite Illinois, Inc."

Subsequently, Gaslite ran promotional advertising and sales of its own incurring expenses of $39,475.32. Gaslite's accountant and treasurer testified that the total losses incurred by Gaslite as a result of advertising costs and lost profits on sales to NI-Gas amounted to $143,348.78. He further testified that when the sum of $50,000 received from NI-Gas was deducted, Gaslite sustained a net loss of $93,348.73. This was the amount of the jury verdict herein.

It is to be noted that the original complaint herein consisted of three counts. At the conclusion of the plaintiff's case the trial court granted the motion of the defendant to strike counts II and III, denied the motion to strike count I and the same was submitted to the jury. Paragraph 9 of count I of the original complaint herein stated that:

> "On or about May 18, 1971, NI-Gas paid Gaslite $50,000 as 'partial payment for assistance to Gaslite Illinois Inc. arising out of the curtailment by NI-Gas of the 1971 market plan.' A copy of the check is attached hereto as Exhibit A."

The answer of NI-Gas to the original complaint admitted this allegation.

The trial herein commenced on July 10, 1974, and on July 11 NI-Gas moved the court to withdraw its answer to paragraphs 9 and 10 as having been "innocently admitted because the fact of partial payment was true." This motion further sought to strike paragraphs 8, 9 and 10 of count I of the plaintiff's complaint. The record does not disclose the disposition of this motion. It would appear, however, that the amended complaint which was filed subsequent to trial upon motion for leave to amend the pleading to conform to the proof, contained the basic allegations of paragraphs 8, 9 and 10 of Count I setting forth the partial payment by NI-

Gas. The basic change in the amended complaint substituted the words "implied promise" for the word "agreement" (between the parties) and the ad damnum was reduced to $93,475.00, the amount of the judgment. In view of the granting plaintiff's motion to amend the pleadings to conform with the proof, it would appear that defendant's motion to strike paragraphs 8, 9 and 10 and to withdraw defendant's answer to paragraphs 9 and 10 was not granted.

As indicated above, a judgment was entered on the verdict on July 15, 1974. Upon the basis of the post-trial motions six months later, on February 14, 1975, the verdict of the jury was vacated, set aside and held for naught.

The question squarely presented to this court is whether a contract existed between Gaslite Illinois Inc., and Northern Illinois Gas. This issue was submitted to the jury by the court under the following instructions given at the request of the defendant:

> "The theory of Count I of plaintiff's complaint is that an agreement existed between plaintiff and defendant. Only if you should so find under Count I may you consider the question of damages.
>
> Should you find that an agreement existed between plaintiff and defendant, the measure of damages would be the amount which would compensate the plaintiff for the loss, if any, which a fulfillment of the agreement would have prevented or the breach of it entailed. In other words, the plaintiff should be placed in the same position it would have been had the agreement been performed, but in no better position. Only those damages may be recovered which the parties to the contract contemplated, at the time of the agreement, would likely occur, and did occur, upon breach, less all amounts recovered by efforts to mitigate.
>
> In order to find the defendant liable to the plaintiff under Count I of the complaint, you must find that an agreement existed between the parties. An agreement arises where there are facts and circumstances from which a meeting of the minds can be inferred or deduced, where there are circumstances proved which, according to the ordinary course of dealing and the common understanding of men, show intent to agree."

The court also gave plaintiff's instruction No. 8 as follows:

> "If you find from a preponderance of the evidence that by reason of the past relationship and dealings of the parties plaintiff could reasonably expect that a gas light and gas grill campaign would be carried out in the Spring of 1971, then the law will imply a promise on the part of the defendant to conduct such a campaign. It is not necessary in order to imply such a promise for there to have been a written contract between the parties."

From the above it would appear that the court and counsel submitted this issue as a factual matter for the determination by the jury. Plaintiff has cited the oft-quoted case of *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14:

> "In our judgment verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

We find that all of the evidence herein, when viewed in its aspect most favorable to Gaslite, does not so overwhelmingly favor NI-Gas that the verdict of the jury could not stand.

Plaintiff contends that under the facts of this case the evidence shows that there was an implied in fact contract between the parties which the defendant breached. In support of this contention plaintiff has stated that Illinois recognizes contracts implied in fact; that the jury was instructed that they had to find a contract implied in fact in order to find for the plaintiff; and that the evidence presented to the jury, viewed in a light most favorable to the plaintiff, established that an implied in fact contract did exist between the parties. Defendant replies that contracts implied in fact differ from express contracts in the manner by which they are proved but that it is essential to both types of contracts that evidence of an agreement between the parties and intention by the promisor to be legally bound be shown. Defendant further contends that when the evidence in the instant record is viewed in its aspect most favorable to the plaintiff an agreement or a contract implied in fact was not established between the parties.

The cases both in Illinois and in other jurisdictions differentiate between "contracts implied in law" and "contracts implied in fact."

> "It is often said that the only difference between an express contract and a contract implied in fact is that in the former the parties arrive at their agreement by words, whether oral or written, while in the latter their agreement is arrived at by a consideration of their acts and conduct, and that in both of these cases there is, in fact, a contract existing between the parties, the only difference being in the character of evidence necessary to establish it." 17 Am. Jur. 2d *Contracts* §3, at 335 (1964).

■■ A contract implied in law will be imposed regardless of the intention of the parties, while a contract implied in fact is based on the facts of the contractual situation from which a contract is implied.

> As is pointed out in Corbin on Contracts §18, at 26 (1952):
> "The distinction between an express and an implied contract, therefore, is of little importance, if it can be said to exist at all."

■■ Actually a contract implied in law is not a contract at all. It is sometimes referred to as a "quasi contract" or a "constructive contract." In earlier days, there being no available writ for this type of obligation, the courts allowed the use of the action of assumpsit—based on a fictitious promise—as a basis for possible recovery. As has been pointed out by various writers discussing this type of action, the obligation arises from the duty to pay, based on justice and equity, frequently based on the doctrine of unjust enrichment. See 66 Am. Jur. 2d *Restitution and Implied Contracts* §2 (1973).

Some confusion exists in the decisions of the courts as to the distinction between contracts implied in fact and contracts implied in law. It may well be that the confusion is brought about as the law in both cases is that a contract may be implied either "in fact" or "in law," as distinguished above. Illinois courts have, of course, as plaintiff contends, long recognized the existence of contracts "implied in fact". (See, *e.g., Board of Highway Commissioners v. City of Bloomington* (1912), 253 Ill. 164, 171-73, 97 N.E.280, 283-84.) In *Beatrice Foods Co. v. Gallagher* (1964), 47 Ill. App. 2d 9, 197 N.E.2d 274, the court had before it a factual situation wherein the parties had dealt with each other over a period of time. Defendant had contracted to perform certain services for the State, and under an arrangement with plaintiff, the plaintiff actually performed the services and defendant signed over the checks he received from the State to plaintiff. When the defendant refused to turn over the last check or its proceeds, plaintiff sued and received a judgment. The court held that plaintiff's complaint stated a good cause of action for money had and received under either the theory of implied in fact contract or implied in law contract. Further, in *United States v. O. Frank Heinz Construction Co.* (S.D. Ill. 1969), 300 F. Supp. 396, the court, applying Illinois law, found as a matter of law that the conduct of the parties established an implied in fact contract which it called an "implied contract."

■■■ In the case before us, therefore, the question is simply, was there an implied in fact contract between the parties herein? In support of its contention that there was not an implied in fact contract, the defendant argues that the meeting of September, 1970 relative to the 1971 promotion between Mr. Klein and Mr. Kaltwasser was merely a suggestion or negotiation for the 1971 campaign; that the November meeting at DeKalb was purely general information; and that Gaslite's activity in the purchase of gas lights and grills discloses that Gaslite purchased $197,419 worth of total goods after January 1971 and that 85% of the gas lights were purchased by Gaslite a month and a half before the DeKalb meeting. Plaintiff, of course, contends that they were proceeding under the "agreement" or "arrangement" as set forth in the amended complaint, for the purchase of supplies for the contemplated 1971 program, and that

they were not notified of the termination of the same until March 12, 1971. We do not feel that, in light of the prior dealings between the parties and the ongoing communications, that the date of the purchase of the items in question is determinative of the issue presented herein. As we have indicated, the sole issue herein was whether there was an "agreement," "arrangement," "implied contract" or a contract upon which Gaslite relied until they were notified that the sales promotion would not proceed in 1971. This was the issue presented squarely to the jury. It has been repeatedly stated that the trial judge should not substitute his judgment for that of the jury on factual questions submitted to the jury simply because the trial judge believes that a contrary result is more reasonable (*Bank of Marion v. Robert "Chick" Fritz, Inc.* (1974), 57 Ill. 2d 120, 311 N.E.2d 138), and should not grant a judgment notwithstanding the verdict unless the *Pedrick* test is met. We find that the order of the trial court setting aside the verdict of the jury and granting a judgment notwithstanding the verdict was in error.

Defendant argues that the trial court should have granted its alternative motion for a new trial based upon alleged errors made in the admission and refusal of certain evidence and in the giving and refusing of certain proposed jury instructions. We shall consider these arguments individually.

The first question presented with regard to the review of the denial of defendant's motion for new trial is whether the fact of the "partial payment" of $50,000 should have been submitted to the jury. It is to be noted that the defendant's instruction, as follows, was given.

> "There has been evidence in this case concerning a payment of $50,000 by defendant to plaintiff to be 'credited against any settlement agreed upon at a future date.' If you find that this payment was with respect to a settlement of differences between plaintiff and defendant, it does not imply an admission of liability."

■■■ Defendant contends that the fact of the $50,000 partial payment was inadmissible since the check was a part of settlement negotiations between the parties. We do not agree. It is true that the Illinois courts have consistently held that offers of settlement are inadmissible. The basis for this is aptly stated in *Hill v. Hiles* (1941), 309 Ill. App. 321, 331, 32 N.E.2d 933, 937, where the court stated:

> "The Illinois courts have consistently refused to permit evidence of mere offers and negotiations for settlement to reach the jury on the ground that public policy favors the settlement of claims outside of court."

We agree with the basic premise that evidence of offers of negotiation for settlement are ordinarily inadmissable. However, we do not find that

to be the fact in the case before us. The check paid to Gaslite, in this court's opinion, was not an offer of settlement nor a negotiation for a settlement but was, as the check stated, "in partial payment for assistance to Gaslite Illinois, Inc. arising out of the curtailment by NI-Gas of the 1971 market plan * * *." We do not consider this to be an offer of settlement but was an actual payment for the curtailment of the program. Thus, it is an admission by NI-Gas that some money is due and owing, the exact amount thereof not having been determined, but it being admitted that it is an amount in excess of $50,000. A general statement in this regard is found in *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 199 N.E.2d 769, where it was held that any statement made by a party or in his behalf which is inconsistent with his present position may be introduced in evidence against him. Herein, NI-Gas acknowledged that payment was due by this check and cannot now contend that it was "an offer of settlement." It was, in fact, an actual payment on the admitted obligation of NI-Gas. We find that admission of this check into evidence, acknowledged by the defendant in its answer and subsequently sought to be striken from its answer on the grounds of innocent mistake, constituted an admission of liability and a payment in part thereof.

NI-Gas has also argued that the trial court committed error when it refused to admit defendant's exhibits 3a, 4a and 5, which it claims show that Gaslite was not damaged due to highly successful efforts to mitigate damages, and a general decline in sales of gas lamps and grills in 1971. We start from the well-recognized rule that the admission of evidence is a matter largely within the discretion of the trial court and its decision will not be reversed unless such discretion was clearly abused. *Cole v. Brundage* (1976), 36 Ill. App. 3d 782, 344 N.E.2d 583; *Trippel v. Lott* (1974), 19 Ill. App. 3d 936, 312 N.E.2d 369.

■■■ Our examination of the record herein with regard to the issue of damages indicates that Gaslite started to prove the extent of its damages by introducing testimony concerning the decrease in sales of gas lights and grills between fiscal year 1970 and fiscal year 1971. Upon objection by NI-Gas, the court refused to admit this testimony and limited Gaslite to proving losses of sales during the planned campaign period and specifically for April, May, June and July, 1971, as compared to the same months of 1970. Thereafter, NI-Gas attempted to introduce defendant's exhibits 3a and 4a which had previously been prepared by Gaslite's accountant. Exhibit 3a contains sales figures for the five fiscal years 1968 through 1972, broken down by type of appliance, and including figures on 6 different types of appliances besides gaslights and grills, which are the only items involved in this lawsuit. Exhibit 4a contains some clearly extraneous matters having to do with rent, and then purports to compare Gaslite's total sales during fiscal years 1970 and 1971 and determine what

percentage were to NI-Gas and what percentage to builders, dealers and others. Only the latter could be relevant to the issue herein, but again we note that the numbers purport to be total sales and that indeed the total sales figures on exhibit 4a are even higher than the sum of all the figures for sales and installations of all items appearing on exhibit 3a. Thus, exhibit 4a clearly includes sales of items which are not involved in this lawsuit and would tend to mislead and confuse the jury; the trial court properly excluded it. Likewise, the great majority of information contained on exhibit 3a was properly excluded as having to do with sales of items not involved herein or in years not involved in this lawsuit. Insofar as the figures for sales of gas lights and gas grills during fiscal 1970 and 1971 are concerned, NI-Gas was attempting to introduce the very information which the trial court had previously excluded on NI-Gas' own objection. We believe that a party should not normally be allowed to complain of a ruling made against it which it has previously induced the trial court to make against the opposite party. We are unpersuaded by NI-Gas' argument that the figures for the full fiscal year 1971 are necessary to show the effects of plaintiff's efforts to mitigate its damages. Because Gaslite's fiscal year ends on September 30, the figures which might go to the issue of mitigation of damages would relate only to sales from April through September. The figures which NI-Gas attempted to introduce were not limited to those six months, but included six months prior to the time of the planned campaign and any possible efforts to mitigage damages. We find no abuse of discretion in the trial court's denial of defendant's exhibit 3a.

■■ Defendant's exhibit 5 was of a slightly different nature. It reported the sales of gas lamps and grills by a company named Charmglow, one of whose customers apparently was Gaslite, the plaintiff herein. Exhibit 5 showed sales from 1968 through 1973 in both numbers of units sold and dollar volume of sales. As near as we can tell this exhibit was offered to show sales trends, including a general nationwide decline in sales of gas lamps and grills during 1971. The offer as finally made was restricted to the years 1968 through 1971, but we agree with the trial court that the exhibit was not the proper vehicle for proving a nationwide trend of any sort. The particular experience of one company may or may not be indicative of the entire industry. Further, we note that the value of sales made is given as gross sales for the years 1968 through 1970, but switches to net sales for 1971. Defendant's exhibit 5 was properly excluded by the trial court.

Also upon the issue of mitigation of damages NI-Gas has argued that the trial court erred in refusing to give defendant's instruction 7 on plaintiff's duty to mitigate damages, and that plaintiff's instruction 11 on damages was erroneous because it failed to instruct the jury on plaintiff's

duty to mitigate damages. This court would have been fully justified in refusing to review these instructions at all in view of the fact that the excerpts from the record submitted herein do not contain all of the instructions tendered or given, and especially because the proceedings at the conference on instructions, as excerpted, contain no reference whatsoever to these two instructions. *Smith v. Ford* (1976), 43 Ill. App. 3d 407, 356 N.E.2d 1306; *Geleto v. Giglietti* (1976), 40 Ill. App. 3d 226, 352 N.E.2d 1.

■■ ■ However, we have thoroughly examined the record and find that the trial court properly excluded defendant's proposed instruction 7. Briefly stated, the only competent evidence bearing on this issue was the testimony of Gaslite's president, Mr. Klein, who stated that after NI-Gas announced there would be no campaign, Gaslite expended a certain sum of money on advertising, increased its efforts to sell gas lights and gas grills to other parties, and did in fact increase the sales to those parties, but not to the extent of its loss of sales to NI-Gas. Gaslite introduced evidence of the loss of income from decrease in sales to NI-Gas. However, no one introduced any evidence as to the amount of increased sales Gaslite made to others. Since no probative evidence was introduced at the trial concerning the extent to which plaintiff was able to mitigate its damages, defendant's proposed instruction 7 was properly refused. (*E.A. Meyer Construction Co. v. Drobnick* (1964), 49 Ill. App. 2d 51, 199 N.E.2d 447; *Kravenas v. Algonquin Township* (1973), 13 Ill. App. 3d 1000, 301 N.E.2d 490.) We note that it was NI-Gas' burden to introduce evidence on the extent of plaintiff's mitigation. NI-Gas having failed to do this, it was not in a position to request an instruction on such matters. (*Wheeler v. Sanitary District* (1915), 270 Ill. 461, 110 N.E. 605; *cf. Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656.) Furthermore, we fail to see how the defendant was prejudiced by the failure to give its proposed instruction 7 when the court did in fact give defendant's instruction 6 which specifically told the jury to reduce the amount of damages by the amount plaintiff was able to mitigate them. If the trial court erred at all it was in giving that portion of defendant's instruction 6 which dealt with mitigation. Finally, since NI-Gas failed to introduce any evidence concerning the extent to which plaintiff was able to successfully mitigate its damages, we find that the trial court did not err in the giving of plaintiff's instruction 11 on damages.

■■ ■ We next consider NI-Gas' argument that other jury instructions given by the court at the request of Gaslite were erroneous, concentrating particularly on plaintiff's instruction 8, set forth above. We note that this particular instruction was not taken from the IPI, or any other identified source. Standing by itself, plaintiff's instruction 8 does not adequately or correctly state the law with regard to implied in fact

contracts. However, that is not the standard by which this instruction must be judged.

> "The test to be applied is whether the instructions considered as a whole and read in a series are sufficiently clear so as not to mislead, and whether they fairly and correctly state the law. Thus, a deficiency in one instruction may be cured by another." (*Cole v. Brundage* (1976), 36 Ill. App. 3d 782, 803, 344 N.E.2d 583, 599.)

Considered by this standard, we believe that the jury was fairly and adequately instructed, on instructions submitted by NI-Gas, that they must find an agreement between the parties before Gaslite could recover. We do not believe that they were misled or confused by the giving of plaintiff's instruction 8. Similarly, we find NI-Gas' argument that the giving of plaintiff's instructions 9 and 13 compounded the error in the giving of instruction 8 to be without merit. The record herein shows no indication that the jury was misled by any of the instructions which were given.

■■ At this point we also note that for the first time in its "Reply to Answer to Petition for Rehearing" NI-Gas raises the argument that plaintiff's instructions 8 and 9 were peremptory instructions and therefore, under the guidelines set forth in *Duffy v. Cortesi* (1954), 2 Ill. 2d 511, 119 N.E.2d 241, had to be complete and correct within themselves. This argument was not presented in the trial court and did not appear in either of the two prior briefs filed by NI-Gas in this court. Under Supreme Court Rule 341(e)(7) (Ill. Rev. Stat. 1975, ch. 110A, par. 341(e)(7)), points not argued in a party's initial brief filed in this court are deemed waived. (*Wenzell v. MTD Products, Inc.* (1975), 32 Ill. App. 3d 279, 336 N.E.2d 125.) This rule has been applied in cases involving both points raised in a reply brief (*Molnar v. City of Aurora* (1976), 38 Ill. App. 3d 580, 348 N.E.2d 262), and in a petition for rehearing (*O'Hare International Bank v. Feddeler* (1973), 16 Ill. App. 3d 35, 305 N.E.2d 325). In this case NI-Gas has attempted to raise a new point at an even later time. Under these circumstances we can see no reason whatsoever to relax the rule, and the point is deemed waived.

Having considered all of the above issues in great detail, we hold that the trial court committed reversible error when it granted the defendant's motion for judgment notwithstanding the verdict. We further hold that the trial court's order on the defendant's alternative motion for a new trial was properly denied. The cause is remanded with instructions to reinstate the judgment rendered by the jury in favor of the plaintiff herein.

Reversed and remanded with instructions.

RECHENMACHER, P. J., concurs.